## McNeil *et al v.* McNeil.

[90 South. 327.   No. 22058.]

DIVORCE.   *On wife's bill for alimony and to set aside husband's fraudulent conveyance, where he seeks divorce, alimony pendente lite and attorney's fees should be granted.*

Where a wife files a bill for alimony and for suit money to set aside a conveyance by the husband in fraud of her marital rights, and the husband answers the bill, admitting that he deserted the wife and had not contributed to her support, though able to do so, and admits making the conveyance for the purpose of defeating her right to resort to him or his property for support, and files a bill asking a divorce, the court should allow alimony *pendente lite* and attorney's fees for the wife, even though she may have some property which she could sell or incumber and pay the attorney and support herself.

APPEAL from chancery court of Lee county.

HON. A. J. MCINTYRE, Chancellor.

Bill by Mrs. Lena McNeil against Curtis McNeil and others for alimony and for suit money and to set aside a conveyance as in fraud of her marital rights, in which the defendant answered and filed a bill asking for divorce. The chancellor refused to allow alimony *pendente lite* or attorney's fees in the alimony suit, but allowed five hundred dollars as attorney's fees for defending the divorce issue in the cross-bill. From this decree the defendants appeal, and the plaintiff brings a cross-appeal. Affirmed on direct appeal, and reversed and remanded on cross-appeal.

*J. R. Anderson* and *Robins & Thomas,* for appellant and cross-appellees.

The clearcut issue, as made by our brief, filed in this cause, and the brief for cross-appellant and the appellee, Mrs. McNeil, is as to whether or not, before Mrs. McNeil

can recover a decree for alimony and attorney's fees, she must show herself not to have effects or means or property sufficient to enable her to employ counsel and prosecute her suit, as contended by us, or that it will be sufficient to show that she has not income sufficient to enable her to employ counsel and prosecute her suit, as contended by cross-appellant and appellee, Mrs. McNeil.

Her counsel contend that, before she will be prevented from having a decree for alimony and attorney's fees, it must be shown that she has not income sufficient to enable her to prosecute her suit and employ attorneys. We say that, before she can have such a decree for alimony, she must show that she has not sufficient property, effects or means, as distinguished from income. This is the issue between us and we must not be diverted from it.

We planted ourselves in our brief in this cause on the decisions of our own court, and we relied upon three of those decisions. *Porter* v. *Porter,* 41 Miss. 117; *Ross* v. *Ross,* 89 Miss. 66; *Evans* v. *Evans,* 88 So. 481. We also cited the three cases referred to in the Ross case: *Verner* v. *Verner,* 62 Miss. 260; *McFarland* v. *McFarland,* 64 Miss. 449; *Garland* v. *Garland,* 50 Miss. 695.

We do not wish again to quote from those decisions, but it will be well to keep in mind that in the Ross case, the court says: "It will thus be seen that in all the cases that have been decided by this court, alimony *pendente lite,* and counsel fees, have been allowed only in cases where the wife was without means to conduct her suit and maintain herself while the litigation was progressing."

And in the Evans case, the most recent case from our court, it is said: "It appears from the evidence that the appellee has a separate estate, amounting to four thousand, two hundred dollars and there is nothing in the evidence to indicate that it is insufficient to enable her to maintain herself and to prosecute this suit. Consequently, she is not entitled to alimony *pendente lite.*"

Learned counsel for Mrs. McNeil, the appellee, and the cross-appellant, has undertaken to explain away the lan-

guage of these cases and the declarations and adjudications of our courts on this question of alimony *pendente lite,* but we do not think that they have succeeded in distinguishing these cases from the case at bar. They quote Corpus Juris and Ruling Case Law to the effect that the wife must have sufficient income to maintain herself and to enable her to prosecute her suit before she will be denied alimony.

· We do not deny that text books to this effect can be found and cases from other courts to the same effect may be found, using the language quoted by counsel, but we contend that it has no application to alimony *pendente lite* in Mississippi, because the court here has arrayed itself with those courts that say it is sufficient to preclude the wife from recovering alimony *pendente lite,* if she has sufficient property or sufficient means or sufficient effects to enable her to prosecute her suit.

There are undoubtedly two lines of authority on this question. The courts of some of the states, where the marriage relation is regarded in rather a loose way, hold that alimony *pendente lite* will be allowed to the wife, although she have means, property, and effect, if it be not sufficient to enable her to prosecute the suit, unless the income from such property or effects was sufficient to maintain and enable her to prosecute her suit.

We could give any number of decisions of other states and other courts announcing the rule maintained by our court in reference to temporary alimony. We will contend ourselves with the following on this question: "When the wife has sufficient separate property the reason for giving her alimony or suit money does not exist and she is not entitled to either." *Westerfield* v. *Westerfield,* 36 New Jersey Equity, 195. "In confusing the amount of alimony *pendente lite,* the amount of the wife's separate estate is to be considered." *Jeter* v. *Jeter,* 36 Ala. 391; *Killiam* v. *Killiam,* 25 Ga. 186; *Corey* v. *Corey,* 81 Ind. 469. "If she be found to have sufficient separate property or means of her own to provide for her support and maintenance, no

temporary alimony will be awarded her" *D'Alguillar* v. *D'Alguillar,* 1st Hagg. Ecc. 773.

A great number of these authorities to the same effect are assembled in 60 Amer. Dec., at page 681. We merely recite this that the court will see that there are two distinct and clear lines of authority on this question.

*George T. Mitchel* and *C. R. Bolton,* for appellee.

Appellant contends that the wife must exhaust her resources before she can call upon her husband, and cites in support of his position *Porter.* v. *Porter,* 41 Miss. 117, and *Ross* v. *Ross,* 89 Miss. 66, 42 So. 383.

We do not desire to disparage these cases in any way. We shall not undertake to sidestep them in any way, but expect to meet them squarely, for we do not believe they can be stretched to the extent that appellant undertakes to stretch them. The Porter case was reversed for the refusal of the lower court to admit testimony of the financial condition of the husband and the Ross case for the refusal to admit evidence as to the wife's means. No quarrel can be found with either of these decisions as long as it remains the law that alimony *pendente lite* is a matter addressed to the sound discretion of the court under the circumstances of the case. Of course, it is necessary that the court give each side an opportunity to be heard and learn the circumstances of each in order to properly exercise this discretion.

Appellant further relies strongly on the case of *Evans* v. *Evans,* 88 So. 481, in support of his contention. The written opinion in that case does not disclose the full facts shown by the evidence. A careful reading of the record shows that the wife had property in money or notes in the sum of at least four thousand two hundred dollars (and possibly more), while on the other hand the evidence fails to disclose with any proper degree of certainty any property of the husband except a small tract of cutover land, the highest valuation on which was only two thousand dollars. The evidence further showed that the

wife was unattached, to use her own language, had no trunk, but only a suit case and was free to go where she pleased. We are utterly unable to see how this case can be considered authority against us here. With the wife possessed of four thousand two hundred dollars in money and notes and the husband having only two thousand dollars worth of cut-over land, we think it would be indeed strange that the husband should be chargéd with alimony *pendente lite,* when the matter is left to the sound discretion of the court.

Our contention is that: The wife is not required to sell or encumber her homestead or her paraphernalia to provide suit money for the purpose of compelling the husband to support her, as he is under legal obligation to do.

We think the true rule is that it is the income from the separate property of the wife and not the *corpus* of it that determines the question of alimony *pendente lite.* The question of the allowance of temporary alimony is one of general equity jurisdiction and has been held by our court not to be dependent upon any special statute. We therefore take the general rule from the following statement in Corpus Juris: "Temporary alimony will not be denied because the wife possessed a separate estate where the income therefrom is not sufficient for her support, and she need not resort to the *corpus* of her estate before calling on that of her husband." 19 Corpus Juris, page 215, sec. 517; 1 R. C. L., page 894, sec. 38. Nor do we think the Ross case is in conflict with this doctrine. We find in the Ross case the statement that the wife: "Will not be required to exhaust her resources for the purpose of conducting the suit before she may claim alimony *pendente lite.*"

We think a careful study of the Ross case puts it in line with the doctrine that the wife's income and not the *corpus* of her estate is what is meant in the opinion of the court by "means of support for herself." In reviewing the previous decisions on this question, the court in the Ross case expressly refers to the case of *Garland* v. *Garland,* 50 Miss. 694. In the Garland case, the court makes the following statement of facts as to the property of the wife: "That

all of the property she owns is a house and some lots of land in the town of Summit, in Pike county, and some lands, of no value for the means of support except by sale; that the house she uses for a residence for herself and two daughters; that she has no means of support except occasionally she has a few day or month boarders."

With this statement of facts in mind, we direct the court's attention to the following language in the Ross case with reference to it: "In the case of *Garland* v. *Garland,* 50 Miss. 694, the facts show that the wife had no means of support for herself and family." If means of support in the Ross case is synonymous with property of any kind, then there is indeed a strange contradiction in the opinion by its reference to the Garland case.

Appellant contends that the means of the wife referred to in the Ross case includes homestead, personal ornaments, the gift of the husband and property of every description.   It contains no specific reference to either homestead or personal jewelry, and we think it is carrying the opinion of the court beyond its legitimate bounds to give it the construction placed upon it by appellant.   The temporary allowance in the Ross case was two thousand dollars, solicitor's fees and thirty dollars per month alimony *pendente lite,* which for six months would be one hundred and eighty dollars.   The total allowed was therefore only three hundred and eighty dollars, and it is conceded that the wife has property real, personal and in expectancy amounting to at least one thousand two hundred and fifty-nine dollars—over three times the amount allowed.   If appellant's contention that even the homestead must be used before calling on the husband, then the admitted facts before the court showed that Mrs. Ross was entitled to no temporary allowance whatever.   Then why did the court not so state in the opinion instead of remanding the case with directions to hear defendant's evidence?   If appellant be right, it is strange indeed that the court begins the opinion in the Ross case with this language:

"Without deciding any other question in this cause, we think the learned chancellor erred in not permitting the defendant to introduce oral proof at the hearing on the motion for alimony *pendente lite.*" The Ross case plainly announces that the wife need not exhaust her resources before calling on her husband. We therefore, respectfully ask a reversal of this case on cross-appeal and judgment here for alimony *pendente lite* and full solicitor's fees.

ETHRIDGE, J., delivered the opinion of the court.

Mrs. McNeil filed her bill in the chancery court alleging that she was lawfully married to Curtis McNeil on the 14th day of February, 1920, that they lived together until the 20th day of June, 1920; that during this time the complainant discharged her duties as a faithful and affectionate wife; that the defendant was of quick and violent temper and abusive toward his said wife; that he failed to amply provide for her support and maintenance, though fully able so to do, and that on or about the 20th day of June, 1920, said defendant, Curtis McNeil, without just cause left the complainant and has not offered to return and has failed to contribute anything toward her support, and that the said separation took place in Lee county, Miss.; that at the time of the separation the complainant owned a small amount of property in her own name, but the said property and the income therefrom was not sufficient to amply provide a support and maintenance for the complainant and her three minor children which she has in her charge and care, being the children of a former marriage; that at the time of the marriage she owned a small home, and during all of the time they lived together as husband and wife they occupied this home furnished by her, and not any home furnished by the defendant; that at the time of the marriage the defendant was a man of means, having property of the value of seventy-five thousand dollars; that since his desertion of the complainant

he has pretended to sell and dispose of the property to his brothers, one a resident of Lee county and the other of the state of Alabama, which said deed was recorded in the records of the county; that the sale of the said property was for the purpose, and so known and understood by the purchasers, of defrauding the complainant and depriving her of her proper and just alimony, temporary and permanent, out of the property of the defendant; that the complainant is entitled to an allowance for alimony *pendente lite* and attorney's fees during the pendency of this suit and on final hearing permanent alimony, and is entitled to have the conveyance set aside and canceled, and is entitled to a lien on said property for said alimony, and prayed for alimony *pendente lite* and attorney's fees and for a decree allowing and awarding reasonable permanent alimony to be made a charge against his property and for a cancellation of the decree selling his property.

The defendant answered, admitting the marriage, and that they lived together until the 20th day of June, 1920, but denied that complainant discharged her marital duties and made a faithful and affectionate wife; denied that he was of quick and violent temper, and denied that he mistreated the complainant, and denies that he was guilty of represensible conduct as alleged, and .denies that he failed to provide for his wife while he lived with her, but admits that on the 20th day of June he left the complainant, and admits that since he left her he had made no offer to return, and that he has failed and refused to contribute to her support or to maintain her. He admits that at the time of the marriage the complainant owned some property, and denies that the income of the property is not sufficient to provide for her support and maintenance, and alleges that the children in her charge have property ample for their support. He admits that at the time of his marriage he was a man of means, and that he was worth at the time of the marriage about forty thousand dollars, and is now worth about thirty thousand dollars, admits that he disposed of the property as alleged in the

bill with the intention of defeating complainant's claim, but denies that it was so known to the other defendants, and alleges that he was so harrassed, nagged, and mistreated by the complainant, and was in such a nervous state, that he was really unfit for the transaction of the business, and for fear that he was about to lose his mind he made up his mind to sell the property, and not only leave the complainant, but also leave the state, and to that end he sold the said property to his brothers, the other defendants. He then avers that because of the mistreatment of him by the complainant and her infidelity, harassing, and nagging, cursing, and abusing him, and her attempt to poison him, he did not believe that the complainant was entitled to any right of interest nor support out of his property, and without consulting counsel he took the step of selling his property with the view of preventing complainant from obtaining his property or any part of it. He denies that she is entitled to alimony *pendente lite* and attorney's fees during the pendency of the suit or permanent alimony on final hearing. He avers that the complainant had property in her own right sufficient to support and maintain her during the pendency of the suit and to employ counsel to represent her in the said cause, and that since making the said sale respondent has concluded to remain here, and by arrangement with his brothers has reacquired the property subject to such debts as he owes.

The defendant with his answer filed a cross-bill alleging certain causes for divorce against his wife, which are unnecessary to set out in this opinion, and prayed for a divorce. Testimony was taken which showed that the defendant, and a cross-complainant, was worth from thirty thousand to forty thousand dollars, and that the complainant had a home in which she lived with her children worth five thousand or six thousand dollars, and that she leased two rooms of her residence for twenty dollars per month, and that she owned diamonds worth from seven hundred to nine hundred dollars, that she received from other sources about thirty dollars a month for herself and chil-

dren, and that her father permitted her to draw checks on his bank account for her needs by signing his name by her, and also that her father had bought certain property, taking title in his own name, the rents and profits of which he permitted her to use, that her taxes on her home amounted to about two hundred dollars a year, and that it required at least one hundred dollars per month for her to live on.

The chancellor refused to allow alimony *pendente lite* or to allow attorney's fees to represent the complainant in the alimony suit and to procure a cancellation of the con-·veyance set out in the bill and admitted in the answer, but he allowed five hundred dollars as attorney's fees for defending the divorce issue in the cross-bill. From this decree the appellants prosecute the direct appeal, and the appellee a cross-appeal.

It is contended by the appellants that, as the homestead is worth more than three thousand dollars, exemption allowed by law, and inasmuch as she had some diamonds given her by the appellant prior to their marriage and some other small means, as set out, it was improper to allow any attorney's fees in defending the divorce issue. While the appellee and cross-appellant contend that under the facts of this record the chancellor should have allowed a temporary support and counsel fees to prosecute her alimony suit.

In *Porter* v. *Porter,* 41 Miss. 116, the court held that on application for alimony *pendente lite* the court will consider; First, whether the statements of the original bill present a case for relief; second, whether the circumstances of the wife are such as to require an allowance; and, third, what is the pecuniary condition of the husband. Applying this test and considering the admissions of the answer, we reach the conclusion that the wife was entitled to alimony *pendente lite* and to counsel fees for prosecuting her suit as well as for defending the cross-bill. We do not think under the circumstances of this record that the wife was required to sell or incumber te small property which she

owned, because, under the issues made, the duty of the husband to support the wife is clearly established. He has a much larger estate than the wife and is amply able to care for her. It is admitted by the husband that he left his wife, and that he is not contributing anything to her support and has not done so since leaving her. We do not think it proper to consider mere gratuities given to the complainant by her father. The duty to support the wife rests upon the husband, and he cannot avoid the performance of this duty by showing that the father will probably see that the wife does not suffer because the father is able to do so and is manifesting a disposition to meet the wants of his daughter. She should not be required to incumber her home nor to sell the same and take a cheaper or less expensive establishment, because on the proof in this record the residence is not a more costly one than she is entitled to have, taking her husband's financial ability as a test. The income as shown in the record that she receives as of right is less than enough for her support under the proof before us. We think that she should be entitled to have her income supplemented by at least fifty dollars per month, and that the judgment allowing counsel fees of five hundred dollars will be permitted to stand as counsel fees on the facts of this record, the proof showing that counsel fees for prosecuting and defending the suits fully would be from one thousand dollars to one thousand, eight hundred dollars. In view of this fact, we think that five hundred dollars will meet the requirements for attorney's fees as a temporary proposition, and on final hearing the court can make such additional allowance as to both alimony and counsel fees as the case may call for after hearing all the facts developed.

There is nothing in *Ross* v. *Ross,* 89 Miss. 66, 42 So. 382, or in *Evans* v. *Evans,* 88 So. 481, that conflicts with our views here. A critical study of *Ross* v. *Ross* shows that the court had in mind the proposition which we announce in the present case. We do not subscribe to the doctrine, as an invariable rule, that the court can only consider the

income of the wife in determining whether she should have temporary alimony. The wife might in many cases have considerable property from which temporarily but small income was received, and might be amply able to support herself pending the trial of the case without jeopardizing her future support in the case of the death of her husband, which, of course, would stop the allowance of alimony further than it had already accrued. In the case before us the husband's means greatly exceed the means of the wife, and his duty to support her is clear. He left the wife instead of her leaving him. No question arises here where the husband is undertaking to furnish at the domicile the needs of the wife.

The judgment of the lower court will be affirmed on direct appeal, and will be reversed on cross-appeal, and a judgment entered here for fifty dollars per month from the filing of the suit, to continue until the final hearing.

*Affirmed on direct appeal, and reversed and remanded on cross-appeal.*