SERIO *v.* SERIO

No. 40495 May 6, 1957 94 So. 2d 799

*Means Johnston,* Greenwood, for appellant.

*Paul D. Montjoy,* Greenwood; *Vincent J. Brocato,* Clarksdale, for appellee.

ROBERDS, P. J.

The parties hereto are man and wife. When the proceedings herein took place they were living apart. On October 17, 1956, the chancellor, upon bill, answer and proof, rendered a decree ordering Mr. Serio to pay to Mrs. Serio $130 per month, in two installments of $65.50 each, for the support and maintenance of herself and their four minor children, and to her attorney the sum of $75 as his fee for representing her. Serio appealed from that decree without supersedeas.

He first says the decree was erroneous in that it ordered him to pay the suit money to Mrs. Serio's attorney and not to her. In that he is correct. Parker v. Parker, 71 Miss. 164, 16 So. 459; Rees v. Rees, 188 Miss. 256, 194 So. 750. However, this may be corrected and a proper decree rendered here if the action of the chancellor in making the allowance is approved. Parker v. Parker, supra. The action is approved and decree will be entered here directing payment to Mrs. Serio.

Mr. Serio next says the proof is insufficient to justify an award for any support and maintenance of

Mrs. Serio. He does not deny he is liable for the support and maintenance of the four children. The decree did not apportion the $130 as between Mrs. Serio and the children. Specifically, Serio says Mrs. Serio was not legally justified in not living with him as his wife; that she had wrongfully, and without just cause, separated from him, and, therefore, he was under no duty to support and maintain her.

The chancellor did not set out his findings of fact, but the evidence was sufficient to establish the following facts, which, we may properly assume, the chancellor concluded were the facts applicable to the issues involved:

The parties hereto were married in Clarksdale, Mississippi, June 24, 1951. They established their home in Greenwood. In March 1955, Mrs. Serio left the domicile and went to the home of a sister in Greenwood. Two children, both boys, had been born to Mr. and Mrs. Serio. She carried the children with her. After a short time she and the children went to her father's home at Clarksdale. On the question of justifying her action in leaving her husband, the proof on her behalf shows that Serio had a very vile temper. He often became very angry at his wife without cause, or, at least, without just cause. Once he slapped her; another time he threw water upon her. He gambled almost nightly. He stayed at home very little of the time. He engaged in the sale of whiskey and undertook to make her sell whiskey for him. He would not pay the household bills, not even the medical and doctor bills for the children. He told her to leave the home. Mrs. Serio was a faithful wife. She did what she could to properly rear the family and assist in defraying expenses.

After her removal to Clarksdale there was a temporary reconciliation. Serio went to Clarksdale and the parties undertook to establish a home there. However,

Serio soon displayed his old traits and characteristics. Mrs. Serio was seriously ill with gallstones. At one time it was thought she could not live, and a priest administered the last rites to her, but she miraculously lived through this attack. Serio appears to have paid little attention to this illness, either personally or in the way of defraying the expenses thereof. Mrs. Serio then discovered that Serio had secretly made preparations to abandon the home and go back to Greenwood. He had packed his clothes, belongings, etc., without her knowledge. She begged him not to go but he went anyway. And, to make matters worse, she was pregnant with twins. She went to a hospital in Clarksdale in January 1956. The twins, both boys, were born January 9, 1956. It appears that Serio never visited her at the hospital. On January 9, 1956, the date the twins were born, she received the following letter from Serio, written in his own handwriting:

"Listen you dirty Skunk, don't you ever send me another bill that you have ever made, because I'm not going to pay any attention to them.

"The agreement I made with that fellow that calls himself a lawyer, well I kept my end of the agreement, but you didn't keep yours which was alright.

"As soon as you can go some place and drop dead." As a witness at the hearing Serio apologized for writing that letter. On March 20, 1956, Mrs. Serio filed a petition in the chancery court for separate support and maintenance for herself and four minor children. On April 3, 1956, the chancellor granted the prayer of the petition.

Did these facts, as we may assume the chancellor found them, justify Mrs. Serio in leaving the home at Greenwood? ▉▉ ▉ The principles involved are discussed in Divorce and Separation, A Brief, by Judge A. B. Amis, Sr., par. 190, pages 252-3, in these words:

"But what would be just cause for the husband to abandon the wife, and conversely, what would be just cause for the wife to abandon the husband, so far as relates to a suit for separate maintenance? Manifestly the decision in each case must depend on its own peculiar facts, and is usually best solved, by applying the rules applicable in cases of desertion. In other words, if the husband's abandonment of the wife was justified, so as to bar her suit for divorce for desertion, or if her abandonment of him was so unjustifiable as not to bar his suit for divorce for desertion, then she would not be entitled to separate maintenance. But if his abandonment of her was so unjustifiable as not to bar her suit for divorce for desertion, or if her abandonment of him was justified so as to bar his suit for divorce for desertion, she would be entitled to maintain her suit for separate maintenance, at any time after the separation occurred, no matter whether she was entitled to a divorce or not. See supra sections 89 to 96. In such cases the general rule 'appears to be that facts sufficient to warrant a divorce need not be established, it being sufficient to show a persistent, unjustifiable course of conduct on the part of the husband rendering the wife's life miserable. Thus where she has been unjustifiably abandoned she is entitled to alimony (separate maintenance) even though it is not of sufficient duration to entitle her to a divorce. In general, alimony (separate maintenance) should be awarded wherever the wife is justified in living separate by reason of her husband's cruelty, or other improper conduct which is of such a nature that she cannot live with him in safety or decency. ▆▆ ▆ Although the authorities are not in accord, the alleged cruelty must generally be sufficient to endanger her personal safety, or health, or of such nature as to render her married life miserable and burdensome.' 1 R. C. L. 939 section 85."
It is obvious the chancellor was amply justified in re-

quiring Serio to assist in the support and maintenance of his wife as the chancellor required him to do in this case.

As to the separation in Clarksdale, the foregoing facts would have weighed heavily in favor of her right to abandon Serio had she abandoned him. However, the evidence predominates here that Mr. Serio left her—not that she left him.

■■ ■ But, Serio says that on September 27, 1956, he wrote Mrs. Serio a letter, inviting her to come and live with him at Greenwood, saying he still loved her and the children, and he wanted the family together; that he would make arrangements for a home at Greenwood and would maintain and support her and the children. Mrs. Serio did not accept that offer. Serio says that precludes her right to separate support and maintenance. In Ouzts, et al. v. Carroll, et al., 190 Miss. 217, 199 So. 76, this Court, dealing with the right of the husband to select the domicile and the duty of the wife to abide by the decision, said: "The husband has the right to choose and establish the matrimonial domicile, and it is the duty of the wife to acquiesce in his selection and follow him to the domicile of his choice unless the choice has been unreasonably and arbitrarily exercised, or where the comfort, health, and general well being of the wife would be jeopardized by such change of domicile."

On August 11, 1956, Mrs. Serio had filed a petition in the chancery court in the foregoing cause to have Serio adjudged in contempt of court for failure to comply with the decree to support his children and Mrs. Serio. Notice of this contempt proceeding had been served upon Serio. Evidently this letter was written by him in the hope it might have bearing upon that proceeding. The letter was dictated by counsel for Serio, and written on a typewriter in the office of said attorney. Evidently the chancellor did not think that Serio intended in good

faith to carry out this letter, and he had a right to so conclude. It will be noted, too, that the letter was simply an expression of an intent to try to acquire some place in which the family could live. There was no guarantee whatever that this would be done, or if one should be acquired, that it would be in a suitable place in which the wife and children might reside. Serio's reason, or excuse, for wanting to move to Greenwood was, as he said, such a move would be "money in his pocket". However, as we construe the testimony, he had been making more at Clarksdale than he was making at Greenwood— at least, practically the same amount. It is noted, too, that the letter failed to state that Serio would abandon his old traits and characteristics so undesirable as applied to the marital relations. We cannot reverse the chancellor on his evident conclusion that this letter from Serio to Mrs. Serio did not, under the circumstances, preclude her right to separate support and maintenance at his hands.

 ■ Serio complains of the amount the chancellor required him to pay for the support and maintenance of his wife and children. That amount was fixed at $130 per month, payable $65.50 the first and fifteenth of each month, and $75 for her solicitors in the representation of her in her effort to procure the support and maintenance. The twins were nine months old and the other two boys were two and three years old respectively. Mrs. Serio was making $25 per week for nine months of the year playing a piano at a dancing school conducted by her sister. Of this amount she had to pay $15 per week for a nurse for the children. Her father had been contributing to the support of Mrs. Serio and the children. Mr. Serio was operating a small grocery store in what is described as the "colored" section of Greenwood. He testified that his net income from the business was $25 to $30 per month. The stock of groceries is of

the value of about one thousand dollars. His father owned the store building. It is not shown that Serio was paying any rent for the building. In addition to this, Serio owns a store building in Greenwood, which he rents for $60 per month. His taxes on the property amount to about five dollars per month. So far as this record discloses Serio is a strong, healthy man, just entering upon his prime. Allowance of separate support and maintenance vel non and the amount thereof are matters largely within the discretion of the chancellor. Mrs. Serio has the expense of supporting herself and four minor children and has a net income of $15 per month for nine months of the year. In other words, her net income is $90 per year. Serio's net income is $1,020 per year. ▇▇ We certainly cannot say the chancellor abused his discretion in the amount he has required Serio to pay monthly for the support of his wife and four minor children.

The decree of the chancellor will be affirmed except that the decree here will require Mr. Serio to pay to Mrs. Serio for counsel fees the sum of $75 within thirty days of the final decree in this Court.

Affirmed as modified.

*Lee, Kyle, Holmes* and *Ethridge, JJ.,* concur.