554 So.2d 300 (1989)
John T. ROBINSON
v.
Nancy Lynn ROBINSON.
No. 07-58575.
Supreme Court of Mississippi.
November 15, 1989.
Rehearing Dismissed January 10, 1990.
*301 William Larry Latham, Mark A. Chinn, Jackson, for appellant.
Bill Waller, Waller & Waller, Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:
This domestic relations action from the Chancery Court of the First Judicial District of Hinds County, Mississippi, challenges the sufficiency of evidence to sustain an award of separate maintenance.
Nancy Lynn Robinson sought separate maintenance from her husband John T. Robinson. John answered the complaint, challenging the constitutionality of judicially awarded separate maintenance, and counterclaimed seeking a divorce on the grounds of habitual cruel and inhuman treatment. In an amended opinion, the chancellor denied a divorce to John and awarded separate maintenance to Nancy. In addition, the chancellor rejected John's claim that separate maintenance is improperly based on gender and, therefore, violative of the Equal Protection Clause of the United States Constitution.
From this decision John appeals, assigning as error the following:
(1) The chancellor erred in denying a divorce to John T. Robinson on the ground of habitual cruel and inhuman treatment.
(2) The chancellor erred in granting separate maintenance to Nancy Lynn Robinson.
(3) The chancellor erred in refusing to hold that awards of separate maintenance in Mississippi are gender based and violate the Equal Protection Clause of the Fourteenth Amendment.
(4) The amount of support awarded by the chancellor was excessive.

I.
John T. Robinson and Nancy L. Robinson were married on December 28, 1963. During their twenty-three year marriage, they had three children, Thomas Alan (age 20), John Clark (age 18), and Mary Frances (age 10), (their ages at the time of the hearing). Upon John's separation from his wife on January 9, 1986, Nancy brought suit against him seeking an award of separate maintenance. John counterclaimed for a divorce on the ground of habitual cruel and inhuman treatment.
The proof offered by the husband upon which to sustain his ground for divorce was based upon adverse physical effects, job demotion, and physiological effects. John contended he suffered weight loss, stomach problems and respiratory disorders as a result of the alleged mistreatment by Nancy. Although he had seen physicians regarding his physical problems, there was no corroboration of medical testimony in support of his claim of failing health. John testified that he ended treatment for his stomach disorders in early 1985 and that his ulcers healed. He further admitted that he had confided in Nancy that his job was causing him to have stomach problems and was causing his hands to break out. However, any health problems were well at the time of separation.
John further blamed Nancy for his job demotion. John testified that his company had demoted him due to poor job performance, but that he told people it was because he wanted to do more technical and detailed work than he was doing as an actuary. However, John's secretary testified that the demotion was voluntary and that it occurred in May, 1986, five months after the parties' separation. John testified that Nancy had been supportive of his job by working to help him earn his degree, entertaining in their home, and traveling with him to conventions.
*302 John further testified that he and his wife maintained normal sexual relations up until the time of the separation, and that he sent her flowers and told her he loved her on their anniversary on December 28, 1985, only 14 days before leaving the marital home because he "just couldn't continue." John maintained that sexual relations were a burden for Nancy and that she couldn't respond to him; yet he also testified that sexual relations were continuing the week of his departure from the marital home.
Finally, John maintained that his father-in-law's contributions to the family finances (a home valued at approximately $200,000.00 of which John is half owner, educational trust funds for their children, paying the private school tuition for their daughter, a monthly allowance for the son in college, and periodic gifts for as much as $15,000.00) affected his self-confidence. However, he neither refused his father-in-law's gratuities nor requested his father-in-law to discontinue his financial gifts.
John admitted that he had had an adulterous affair with another woman, but that the affair did not begin until after the separation. John's witness, Mrs. Estes, testified that she had seen John and his mistress at employment functions together prior to the separation. John terminated the affair after detectives discovered the relationship.
Nancy testified that she did everything in her power to keep the marriage together, including seeing a marriage counselor. After meeting with the counselor once, John refused to continue the sessions. He now refuses to return to the marital home under any circumstances. Nancy testified that she's willing to accept the return of her husband to the marital domicile and does not want a divorce.
At the conclusion of the trial, the chancellor rendered his bench opinion awarding John a divorce on the ground of habitual cruel and inhuman treatment. Nancy was awarded use and possession of the home, custody of the minor children, child support in the amount of $900.00 per month per child and $6,000.00 to pay debts incurred by Nancy after the separation.
Some of the chancellor's pertinent findings in his first bench opinion were as follows:
Arguments ensued growing in intensity and frequency over the years and the very acts of generosity on the part of Nancy's family ... tended in the long run to be part of the difficulties which ensued between them. John thought he was making a good salary and that they should live on his income. Nancy wanted . .. to live in the style to which she had become accustomed in her father's home... . [T]he effect of her drive in this direction was to drive a wedge between herself and her husband. Her efforts, her attitude and her desires were not necessarily bad in themselves but given the psychological makeup of her husband, Nancy in effect brought about the separation of the parties.
[T]he interminable arguments that lasted well into the night that made it difficult if not impossible for him to carry on his work, made it totally impossible for him to continue to live under such circumstances. I am satisfied that he was justified in leaving and that the actions of Nancy, given all the circumstances of the case, did truly in fact amount to habitual cruel and inhuman treatment entitled John to grounds for divorce. The relief from a situation at home that was intolerable did nothing to enhance John's judgment and he soon entered an affair with another woman.
While I am sure she did not approve in any way, the affair obviously was no deterrent to Nancy who states that she would take him back if he would come back to her. I saw no real understanding on the part of Nancy as to what had broken up her marriage and I do not believe that there would be any possibility of a resumption of the marriage given the psychological backgrounds of each one of these parties. The marriage has ended.
The following day, the chancellor requested that both attorneys meet with him at his office. He informed counsel that he had made an error in judgment and felt *303 compelled to rewrite his bench opinion. Thereafter, on August 22, 1987, an amended bench opinion was filed. The findings of the opinion remained unchanged, but the end result was to deny John a divorce and to award Nancy and the children separate maintenance in the amount of $2,925.00 per month until January 1, 1988, when the amount would increase to $3,000.00 per month. Further, this amount would decrease to $2,500.00 per month when the oldest child reached 21 years of age. This amount will continue until the two remaining children are emancipated at which time the payments will cease. John was also ordered to maintain medical insurance on the children, and Nancy was awarded use and possession of the home until such time as the last child became emancipated.
A final judgment was entered in accordance with the amended opinion from which this appeal has been taken.

II.

DID THE CHANCELLOR ERR IN HOLDING THAT JOHN ROBINSON FAILED TO SUSTAIN HIS BURDEN OF PROOF FOR A DIVORCE BASED ON THE GROUND OF HABITUAL CRUEL AND INHUMAN TREATMENT?
Recent opinions of this Court have reaffirmed the requirement for a divorce that the behavior or course of conduct be severe and beyond everyday quarrels. Gallaspy v. Gallaspy, 459 So.2d 283 (Miss. 1984) and its progeny make "clear that a party alleging cruel and inhuman treatment must prove systematic and continuous behavior on the part of the offending spouse that goes beyond mere incompatibility, or no divorce may be granted on such grounds." Day v. Day, 501 So.2d 353, 355 (Miss. 1987).
As stated in Day,
This Court has refused to allow a divorce to be granted on the grounds of habitual cruel and inhuman treatment where the facts are stronger than those in the instant case. Indeed, this case is yet another in our developing litany where one spouse seeks a divorce on the basis of cruel and inhuman treatment but the problem is fundamental incompatibility.
Day at 355. (citations omitted).
The chancellor in his amended opinion found that Nancy's efforts, attitude, and desires to live beyond her husband's financial means, although not bad in themselves, were the cause of the separation, given the psychological makeup of her husband. The chancellor's findings held the husband was justified in leaving the home under all the circumstances, and expressed the conclusion that the resumption of the marriage was impossible, given the psychological background of the parties. However, he further found that under the proof of this record and the case law of this state that no divorce could be granted. There is support in the record for this finding.
Because the Chancery Court's ultimate finding of fact that Nancy was not guilty of habitual cruel and inhuman treatment of John is supported by substantial evidence, it is beyond this Court's authority to disturb. Dillon v. Dillon, 498 So.2d 328 (Miss. 1986); Devereaux v. Devereaux, 493 So.2d 1310, 1312 (Miss. 1986). This assignment of error, therefore, is without merit.

III.

DID THE CHANCELLOR ERR IN AWARDING SEPARATE MAINTENANCE TO NANCY ROBINSON?
The court-created equitable relief of separate maintenance is based upon the marriage relationship. This Court discussed the function of its office in Thompson v. Thompson, 527 So.2d 617 (Miss. 1988) in the following terms:
In Etheridge v. Webb, 210 Miss. 729, 50 So.2d 603 (1951), this Court said:
"... The power to grant separate maintenance to a wife was based on (a) separation without fault on the wife's part, and (b) willful abandonment of her by the husband with refusal to support her. These jurisdictional requirements for a separate maintenance decree have continued up to the present time." 210 Miss. at 743, 50 So.2d at 607.
*304 Bridges v. Bridges, 330 So.2d 260, 262 (Miss. 1976).
A decree for separate maintenance is a judicial command to the husband to resume cohabitation with his wife, or in default thereof, to provide suitable maintenance for her until such time as they may be reconciled to each other. Amis, Divorce and Separation in Mississippi, § 189 (1st ed. 1935); Bunkley and Morse's Amis, Divorce and Separation in Mississippi, § 7.00 (2d ed. 1957); see Hand, Divorce, Alimony and Child Custody, § 25-1 (2d ed. 1987).
Id. at 621.
John contends that Nancy is not entitled to separate maintenance because the chancellor, in his final order, found her conduct materially contributed to the separation.
This Court will not reverse a Chancery Court's findings of fact where they are supported by substantial credible evidence in the record. Anderson v. Burt, 507 So.2d 32, 36 (Miss. 1987); Norris v. Norris, 498 So.2d 809, 814 (Miss. 1986). This is true of ultimate facts as well as evidentiary facts. Norris, 498 So.2d at 814. Put another way, this Court will affirm a trial court sitting without a jury on questions of fact unless, based on substantial evidence, the court is manifestly wrong. Brown v. Williams, 504 So.2d 1188, 1192 (Miss. 1987); Harkins v. Fletcher, 499 So.2d 773, 775 (Miss. 1986).
A careful reading of the record clearly demonstrates that the lower court correctly found that Nancy's conduct materially contributed to the separation because of the psychological makeup of her husband; thus, the wife here was not without fault. John's argument that the award of separate maintenance was unwarranted has merit. Under the chancellor's findings, which are supported in the record, this Court agrees that there should be no award of separate maintenance. Although the wife did make efforts to salvage this marriage after the separation by seeking marital counseling, these efforts came too late. Finding the husband's leaving the marriage was justified, the Court is of the opinion that no separate maintenance can be awarded to the wife. Marble v. Marble, 457 So.2d 1342 (Miss. 1984); Cox v. Cox, 279 So.2d 612 (Miss. 1973); King v. King, 246 Miss. 798, 152 So.2d 889 (1963) states:
"While the law does not require a wife who leaves her husband to be blameless, misconduct on her part which materially contributes to the separation, so that it may be said that the fault of the wife is equal to or greater than that of the husband, or that his fault was not sufficient to justify her leaving the domicile, is a defense to her suit for separate maintenance." See Hilton v. Hilton, 88 Miss. 529, 41 So. 262 (1906).
Id., 152 So.2d at 891. Based upon the chancellor's finding supported by the record, and the case law of this state, this Court reverses the chancellor's granting of separate maintenance for the wife, but affirms the award of support for the minor children.

IV.

WAS THE AMOUNT OF THE AWARD OF SEPARATE MAINTENANCE JUST AND EQUITABLE?
It must not be overlooked that the final judgment ordered that the final judgment ordered that John pay $2,925.00 per month "as separate maintenance and child support until January 1, 1988, whereupon the amount of separate maintenance for herself and child support for the three children shall increase to $3,000.00 per month," until the oldest child reached twenty-one years of age or emancipated when the payment would reduce to $2,500.00 per month and continue until the youngest child is emancipated. The decree is silent as to an amount designated for the wife's support separate from the children's support. The wife argues here that the entire amount is no more than child support. The court notes that the oldest child has reached the age of majority and a second child is nearing majority. Unfortunately, because of this Court's docket, too much lapse of time has passed, and the children's present situation is uncertain.
However, that amount which was previously awarded was not an excessive sum *305 for the children's support under Mississippi case law and the children's needs. The amount of the allowance for separate maintenance was set forth in Amis, Divorce and Separation in Mississippi § 193 (1st ed. 1935) as follows:
The amount of the allowance, as in awarding permanent alimony, is within the sound discretion of the court, and will not be disturbed on appeal except in case of a clear abuse thereof... . Nor should it include any sum for the support of a child or children of the parties who may live with the wife because the duty of the father to support his children is separate and distinct from the duty of the husband to support his wife. 1 R.C.L. 921 section 70. In all cases due consideration should be given to the right of the husband to live as comfortably as his wife, but not more so, and also to his legal obligation to support his children... . The purpose should be to provide, as nearly as may be possible, the same sort of normal support and maintenance for the wife, all things considered, as she would have received in the home, if the parties had continued normal cohabitation, and the wife had helped in a reasonable way, in view of her health and physical condition, to earn her own support and that of the family. For a decree for separate maintenance cannot confer on the wife any greater rights, than she would have had if cohabitation had continued. It is merely an enforcement, as near as may be, of the same rights she had before the separation.
(Emphasis added).
In making an award of separate maintenance, the court is to consider:
(1) The health of both husband and wife;
(2) Their combined earning capacity;
(3) The reasonable needs of the wife and children;
(4) The necessary living expenses of the husband;
(5) The fact that the wife has free use of the home and furnishings; and
(6) Other such facts and circumstances bearing on the subject that might be shown by the evidence.
Gray v. Gray, 484 So.2d 1032, 1033 (Miss. 1986); Tanner v. Tanner, 481 So.2d 1063, 1065 (Miss. 1985).
John testified his annual rate of pay in 1987 would be $88,700.00 and that he has received consecutive raises for 18 years. His assets are approximately $223,000.00 while his total indebtedness is approximately $15,000.00. Nancy netted approximately $19,000.00 in 1986 from oil and gas royalties she received over the years as gifts from her father. She expected to receive the same amount in 1987. Nancy has received periodic gratuities from her father, but as held in McNeil v. McNeil, 127 Miss. 616, 90 So. 327 (1921),
We do not think it proper to consider mere gratuities given to the complainant by her father. The duty to support the wife rests upon the husband, and he cannot avoid the performance of this duty by showing that the father will probably see that the wife does not suffer because the father is able to do so and is manifesting a disposition to meet the wants of the daughter.
McNeil, 90 So. at 329.
The trial court awarded Nancy and her three children approximately 41% of John's salary. This does not appear to be an unreasonable amount in view of the Tanner factors as both parties are in good health; John's earning power is approximately four times as great as Nancy's, and the needs of Nancy and the children are reasonable in light of the style of living to which they have become accustomed. Therefore, the amount of the award of separate maintenance to Nancy and the children was just and equitable for those sums paid to this date.
However, our consideration cannot end here for this Court is setting aside any part of the maintenance which goes to the wife, if any. Since the chancellor's finding that the wife's actions caused and justified the separation and since that finding is supported in the record, the Court dissolves any future separate maintenance for the *306 wife under the court order of June 29, 1987. Child support, including medical payments, in an amount sufficient to meet their needs must continue.
However, since a delineation between child support and the wife's maintenance was not made in the original judgment, this Court remands this issue to the Chancery Court of Hinds County for a factual finding of the minor children's present needs in line with the mother's and father's financial ability to provide.

V.

WAS THE CHANCELLOR CORRECT IN DENYING JOHN ROBINSON'S EQUAL PROTECTION CHALLENGE TO THE DOCTRINE OF SEPARATE MAINTENANCE?
John relies upon Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979), to support his equal protection challenge to the doctrine of separate maintenance. In Orr, the United States Supreme Court struck down an Alabama statute which created a right of alimony in favor of women only. The United States Supreme Court held that the law created a suspect, gender based classification which served no important governmental purpose and was, therefore, violative of the man's right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.
The Mississippi Legislature amended the divorce statute effective July 1, 1985, regarding alimony in light of the Orr decision to read as follows:
When a divorce shall be decreed from the bonds of matrimony, the court may, in its discretion, having regard to the circumstances of the parties and the nature of the case, as may seem equitable and just, make all orders touching the care, custody and maintenance of the children of the marriage, and also touching the maintenance and alimony of the wife or the husband, or any allowance to be made to her or him, and shall, if need be, require bond, sureties or other guarantee for the payment of the sum so allowed.
§ 93-5-23, Miss. Code Ann. (1988) (emphasis added).
However, this authority for a equal protection challenge is in a suit for divorce where the marriage is being dissolved and is inapplicable to the case at bar where no divorce is granted. This Court notes that the governmental objectives in separate maintenance suits will have to be addressed in the proper case, but here the Court does not address the issue since the separate maintenance to the wife, if any, has been set aside. Orr v. Orr, supra. "[C]onstitutional questions are not reached unless necessary for a decision of a case." Tribou v. Gunn, 410 So.2d 378, 380 (Miss. 1982).
Under Mississippi case law, John Robinson failed to sustain his burden of proof on the ground of cruel and inhuman treatment, and Nancy Robinson's conduct did materially contribute to the separation. Therefore, the trial court's denial of a divorce to John was proper; the award of separate maintenance to Nancy, if any, is dissolved and the award to her is reversed and rendered. The issue of the amount of child support is remanded to the Chancery Court of Hinds County.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REMANDED ON CHILD SUPPORT.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
ROBERTSON, J., concurs in part and dissents in part.
ROBERTSON, Justice, concurring in part, dissenting in part:
There is much in the opinion of the Court with which I agree. In Part III, however, the Court holds that on this record and in this procedural posture Nancy Lynn Robinson is precluded separate maintenance. With respect, I disagree.
The Court proceeds on the legal premise that, where the fault of the wife is equal to or greater than that of the husband, she is *307 entitled to no separate maintenance, citing King v. King, 246 Miss. 798, 804, 152 So.2d 889, 891 (1963). I perceive no such absolute rule in King and think the better course one of equitable discretion in the chancery court allowing for sensitivity to the facts and circumstance of the particular case.
My principal concern is on the point of application. Assuming the majority's perception of King and the rule it states is correct, the opinion in no way explains how application of that standard to the facts of the case requires reversal. This is particularly so in view of the settled premise that an award of separate maintenance may not be set aside on appeal unless we find that the court below has proceeded according to an incorrect view of the law or has substantially abused its authority in that the maintenance ordered paid is not supported by credible evidence or is otherwise manifestly wrong. See Burkett v. Burkett, 537 So.2d 443, 446 (Miss. 1989); Tanner v. Tanner, 481 So.2d 1063, 1064 (Miss. 1985); Kergosien v. Kergosien, 471 So.2d 1206, 1211 (Miss. 1985); Bridges v. Bridges, 330 So.2d 260, 263 (Miss. 1976); Owens v. Owens, 234 Miss. 261, 106 So.2d 59 (1958).
All we are told is that "Nancy's conduct materially contributed to the separation because of the psychological makeup of her husband." The most I can tease from this record is that because of her family background and her psychological makeup, Nancy could at times be difficult, but surely John knew that when he married her. It certainly appears that Nancy played her part in the frequent arguments of the parties and no doubt persistently was unable to live within the family's financial means. I do not doubt John was justified in leaving her. He probably should have left long ago. What I question is whether this is such that as a matter of law Nancy may be precluded eligibility for separate maintenance. After all the Court quite correctly holds Nancy's (mis)conduct falls far short of establishing grounds for divorce. Indeed, we have denied divorce in cases of far greater fault on the part of the wife than is found here in cases ranging over most of the century from Humber v. Humber, 109 Miss. 216, 68 So. 161 (1915), to Wilson v. Wilson, 547 So.2d 803, 804-05 (Miss. 1989). The point is that if Nancy is not guilty of fault such that John is entitled to a divorce, how is it that she is guilty of fault such that she should be denied separate maintenance?
I balk at the suggestion that Nancy's conduct materially contributed to the separation "because of the psychological makeup of her husband." The only thing apparent in this record about John's psychological makeup is that his pride was supposedly wounded by the fact that Nancy's father contributed to the family a home valued at approximately $200,000.00 (of which John is half owner), educational trust funds for the children, private school tuition for the daughter, a monthly allowance for the son in college, and periodic gifts for as much as $15,000.00, none of which John refused. How this becomes Nancy's fault precluding separate maintenance escapes me.
As I understand the evidence, John has unencumbered assets of approximately $208,000.00 and an annual salary of approximately $88,700.00. In these circumstances, the suggestion that a payment of $3,000.00 per month for the support and maintenance of his wife and three children might be excessive strikes me as simply wrong.
The majority's sub silentio premise is that Nancy's family can well provide for her and that she needs no support from John. Of course, the point is not expressed because our law precludes consideration of any such factor. Serio v. Serio, 231 Miss. 147, 154, 94 So.2d 799, 802 (1957). Cf. McNeil v. McNeil, 127 Miss. 616, 625-27, 90 So. 327, 329 (1921).
In sum, the law and the facts of this case are such that, given our limited scope of appellate review, today's separate maintenance award should have been beyond our authority to disturb.