881 So.2d 220 (2003)
Demetra P. MYERS, Appellant/Cross-Appellee,
v.
Mark E. MYERS, Appellee/Cross-Appellant.
No. 2002-CA-00326-COA.
Court of Appeals of Mississippi.
June 17, 2003.
Rehearing Denied December 16, 2003.
*221 Philip Mansour, Greenville, for appellant.
Lindsey C. Meador, Cleveland, for appellee.
EN BANC.
CHANDLER, J., for the court.

MODIFIED OPINION ON MOTION FOR REHEARING
¶ 1. This cause came before the Court on motion for rehearing. That motion is denied, the prior opinion withdrawn and this modified opinion substituted in its stead.
¶ 2. Mark Myers was ordered by the Chancery Court of Bolivar County to provide to his wife, Demetra Myers, separate maintenance of $600 per month along with other expenses. The court also ordered the parties to sell their marital home and use the proceeds to purchase a more affordable house. Demetra appeals the chancellor's decision asserting the following issue:
WHETHER THE TRIAL COURT ERRED IN ORDERING THE SALE OF THE MARITAL HOME.
Mark cross-appeals on the following issue:
WHETHER THE TRIAL COURT ERRED IN AWARDING AN EXCESSIVE *222 AMOUNT OF SEPARATE MAINTENANCE TO DEMETRA.
¶ 3. After careful review of the record, we reverse and remand as to the direct appeal.

FACTS
¶ 4. Mark and Demetra were married on November 22, 1987, and lived together until they separated April 6, 2000. One child, a daughter, was born of the marriage May 14, 1989.
¶ 5. On May 24, 2000, Mark filed a complaint for divorce on the grounds of habitual, cruel and inhuman treatment. Alternatively, Mark sought an irreconcilable differences divorce. He also petitioned the court to sell the marital home when the child reached the age of twenty-one. Demetra then filed an answer denying Mark's grounds for a divorce and requested a separate maintenance order based on Mark's desertion and adultery.
¶ 6. The parties' assets included a recently built 4,700 square foot home on five acres of land just outside Boyle, Mississippi, in Bolivar County. This home was subject to a $200,000 mortgage with monthly payments of $1,767. The mortgage had almost gone into foreclosure on two separate occasions. In addition to the marital home, the parties owned eight acres surrounding the home, a mobile home, a pontoon boat, a four wheeler, a duck boat and ten to fifteen guns.
¶ 7. On February 22, 2001, Demetra filed a motion for a temporary hearing asking the court to award her support and maintenance, custody of the child, and use and possession of the marital home. She also asked the court to order Mark to make the mortgage payments on the marital home and provide her with a car because the parties' 1995 Cadillac was recently repossessed.
¶ 8. Mark filed his answer in which he agreed to temporarily provide support and maintenance to Demetra. He also agreed to Demetra's having temporary custody of the child and use and possession of the home. However, Mark contended that he could not financially afford to make the mortgage payments on the marital home. He stated that the mortgage was scheduled for foreclosure on March 12, 2001. He asserted that he had asked Demetra on several occasions to consent to selling the property, but that she had refused. He requested the court to order the sale of the marital home. Mark also maintained that he could not afford to provide her with an automobile. He claimed that Demetra had been provided with an automobile from her deceased father's estate.
¶ 9. The court entered a temporary order on March 12, 2001, awarding Demetra temporary custody of the child, and granting her a separate maintenance award of $600 per month and use of the marital home. The chancellor directed the parties to execute long-term financing on the marital residence. The chancellor also ordered the parties to sell the eight acres of land surrounding their residence to Mark's parents to obtain funds to pay the remaining balance on the Cadillac.
¶ 10. At trial on October 1, 2001, Mark announced that he would not pursue his complaint for divorce and would agree to provide Demetra with separate maintenance. The chancellor then made the following ruling: due to the maintenance and costs associated with the marital home, the parties were to sell it. The sale was to be subject to the court's confirmation. The net proceeds from the sale were to be placed in a joint account and used for the purchase of a more economical marital residence.
¶ 11. Additionally, the court awarded Demetra primary custody of the child and *223 granted her $600 per month in separate maintenance. The chancellor also ordered Mark to pay the monthly house note, pay all taxes and insurance relative to the marital home, pay the child's private school tuition and provide health insurance for Demetra and the child.
DID THE CHANCELLOR ERR IN REQUIRING THE PARTIES TO SELL THEIR MARITAL ESTATE AND PLACE THE PROCEEDS INTO A JOINT ACCOUNT?
¶ 12. Demetra argues that the chancellor had no authority to require the parties to sell the marital home. She contends that this sale amounted to a divestiture of title to a marital asset.
¶ 13. Mark asserts that the chancellor did not err because this was not a divestiture of property but an adjustment of equities. Mark contends that the chancellor is only prohibited in a separate maintenance action from divesting the husband of title to real estate and investing it to the wife.
¶ 14. We find that the chancellor's ruling was not within the spirit of the common law remedy of separate maintenance. By definition "separate maintenance is a judicial command to the husband to resume cohabitation with his wife, or in default thereof, to provide suitable maintenance of her until such time as they may be reconciled to each other." Wilbourne v. Wilbourne, 748 So.2d 184(¶ 9) (Miss.Ct.App.1999) (emphasis added). Case law establishes that once the couple reunites, the separation agreement including settlement of property rights, becomes null and void. Gardner v. Gardner, 234 Miss. 72, 79, 105 So.2d 453, 455 (1958).
¶ 15. To enforce the partition of the marital home is contrary to public policy which encourages marriage. Whitman v. Whitman, 206 Miss. 838, 844, 41 So.2d 22, 25 (1949). The dissent argues that "the question here is not one of public policy, but rather one of procedure: at what point does a chancellor possess the authority to order partition of marital property?" The dissenting opinion's answer to that question is that it must come at the request of one of the parties. On that issue the majority and the dissent are in total agreement. The dissent finds that Mark's withdrawn petition constituted such a request. On that issue the majority and the dissent do not agree.
¶ 16. The dissent cites a number of cases which are claimed to make it "clear that a partition may be sought regardless of policies encouraging marriage." The majority finds that what is clear from the cited case law is, as stated previously, that the court can only act to partition at the request of one of the parties, whether that request be expressed or implied.
¶ 17. The dissent finally argues that "even granting the majority's interpretation of the underlying rationale for separate maintenance as somehow extinguishing Mr. Myers' request pursuant to his divorce pleading, I still find sufficient record support for the chancellor to grant partition." The majority is loath to find such support. We find that the chancellor's ruling to partition the land was more permanent than necessary.
¶ 18. Accordingly, this Court reverses on this issue.

CROSS-APPEAL
WAS THE CHANCELLOR'S AWARD OF SEPARATE MAINTENANCE EXCESSIVE?
¶ 19. The amount of the separate maintenance award is "within the discretion of the chancellor and is not subject to reversal absent a clear abuse of that discretion." Nichols v. Nichols, 254 So.2d *224 726, 727 (Miss.1971). During this period of separation, "the wife is entitled to be maintained in the same standard of living as if the parties were still cohabiting." Stanford v. Stanford, 734 So.2d 359, 361(¶ 3) (Miss.Ct.App.1999). However, the chancellor should not overlook the fact that the husband has the right "to lead as normal a life as reasonably possible with a decent standard of living." Nichols, 254 So.2d at 727.
¶ 20. The following factors are to be considered when making an award of separate maintenance:
(1) The health of both husband and wife;
(2) Their combined earning capacity;
(3) The reasonable needs of the wife and children;
(4) The necessary living expenses of the husband;
(5) The fact that the wife has free use of the home and furnishings;
(6) Other such facts and circumstances bearing on the subject that might be shown by the evidence.
Daigle v. Daigle, 626 So.2d 140, 145 (Miss.1993). There is a presumption that the chancellor has taken into consideration all of these relevant factors when determining the appropriate amount of the payments. Tanner v. Tanner, 481 So.2d 1063, 1064 (Miss.1985).
¶ 21. At the time of trial, Mark was employed in a family-owned business called Needle Specialty Products. His take-home pay was $4,118 per month. Mark also testified that he had been the recipient on several occasions of an annual or semi-annual bonus. He testified that the last bonus he received was for $10,000; however, he could not establish the year in which he had received it.
¶ 22. Demetra testified that she earned $890 per month working for Farm Bureau. There was also evidence presented at trial regarding Demetra's health condition. In 1998, Demetra was diagnosed with fibromyalgia which is a musculoskeletal disease that causes muscular pain and fatigue. She testified that prior to trial the pain had increased to a point that she was no longer able to walk. She also stated that she suffered from diabetes and high blood pressure. Demetra testified that due to her medical condition, she received $445 per month in Social Security disability payments. Demetra's total monthly income was $1,335. She testified that her expenses totaled $5,134 per month.
¶ 23. The chancellor's separate maintenance decree ordered Mark to pay each month, the house note of $1,767, the insurance and tax on the marital home of $277, the child's private school dues of $229, and spousal support of $600. In total, this amounts to $2,874 per month. Mark argues that this award was excessive considering the expenses would be 71% of his monthly pay. He contends that the order leaves him only $1,144. He claims his monthly bills total $5,054.
¶ 24. Citing Robinson v. Robinson, 554 So.2d 300, 305 (Miss.1989), Mark contends that his payments should not exceed 41% of his adjusted monthly income. In Robinson, the Mississippi Supreme Court held that the chancellor's order requiring the husband to allocate 41% of his monthly income to the separate maintenance agreement was reasonable. Id. However, the court never stated that 41% was the maximum amount of a husband's salary to be awarded in a separate maintenance order. In Stanford, 734 So.2d at 361(¶ 6), this Court upheld a chancellor's order which required the husband to allocate 61% of his monthly income for the family's house payment, child support, family medical expenses and spousal support.
*225 ¶ 25. The problem in this case stems from the enormous financial obligations of both parties. The parties struggled to make their payments while they were living together. Living separately only magnifies the problem. But decreasing the amount of separate maintenance is not the proper solution. The award is equitable due to Demetra's poor health and the great disparity between their respective incomes. We find no merit to this issue.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF BOLIVAR COUNTY IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION ON DIRECT APPEAL AND AFFIRMED ON CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, P.J., BRIDGES, LEE, AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. SOUTHWICK, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MCMILLIN, C.J., THOMAS AND MYERS, JJ.
SOUTHWICK, P.J., DISSENTING.
¶ 27. The majority finds inadequate pleading support for the chancellor's order of partition of the marital home. It therefore reverses so that a proper request may be made. Because I find that the procedural mechanisms activating the chancellor's authority to order the sale were met, I respectfully dissent.
¶ 28. The majority asserts that pleadings filed by Mr. Myers had been withdrawn upon the commencement of the separate maintenance hearing and therefore could not support partition. I do not find that to be an accurate characterization of the record. Mr. Myers made two express requests for a sale of the home. In his initial complaint for divorce, Mr. Myers sought to have the equity in the marital home frozen until the attainment of his daughter's majority, at which time "the marital home may either be sold to a third party or one of the parties hereto can purchase the other's equity." Later Mr. Myers again asked for a sale without that contingency, this time preparatory to a hearing on temporary matters raised by the pleadings.
¶ 29. The Supreme Court has discussed the propriety of a request for partition that is filed in a divorce suit. A chancellor had denied each spouse's claim for divorce but nevertheless ordered equitable distribution of marital property. Bowen v. Bowen, 688 So.2d 1374, 1376 (Miss.1997). The chancellor awarded exclusive use of the home to the husband until the occurrence of certain events (abandonment of the home or emancipation of the youngest child), at which time the home was to be sold. Id. at 1382. The court found that the chancellor's order to partition the home by sale was premature. "Chancellors have no authority, incident to separate maintenance orders, to order the partition of real property in the absence of a petition for such." Id. at 1383 (emphasis added). However, in Bowen, the opinion noted that "Linda did not request a partition of the home." Id. at 1382. Implicitly, neither did Mr. Bowen.
¶ 30. Bowen does not require an independent action seeking partition. Mr. Myers already had a request for a sale properly before the chancellor. A remand in order to obtain another is superfluous.
¶ 31. Additionally, the majority suggests that to enforce a partition here would subvert longstanding public policy encouraging marriage. I do not find that the public policy arguments in favor of marriage impact on whether a spouse may seek the partition by sale of a financially *226 burdensome marital home. Joint owners of property, even spouses not contemplating divorce, are entitled to seek partition of property. Miss.Code Ann. § 11-21-3 (Supp.2002), Trigg v. Trigg, 498 So.2d 334, 335-36 (Miss.1986). See also Miller v. Miller, 838 So.2d 295, 298 (Miss.Ct.App.2002) (holding that denial of divorce and corresponding equitable distribution does not preclude a partition action by res judicata).
¶ 32. Trigg and Miller speak to the unquestioned ability of a spouse to obtain partition through a separate civil action. Thus, the question here is not one of public policy but rather one of procedure: at what point does a chancellor possess the authority to order partition of marital property? Bowen indicates that a petition for partition, even when filed in action commenced for other purposes, would trigger the chancellor's statutory authority. The requirement, though, is that a party must make a request. Jointly owned property cannot be divided by sale or otherwise at the initiative of the court.
¶ 33. The Supreme Court has held that a spouse may pursue partition in a divorce action: "If she can proceed separately to this effect, she can certainly proceed in this manner and seek this relief as an incident to her action for divorce...." Johnson v. Johnson, 550 So.2d 416, 419 (Miss.1989) (abrogated as to the application of a gift presumption to jointly titled property in Pearson v. Pearson, 761 So.2d 157, 162-63 (Miss.2000)).
¶ 34. In Johnson, the court held that a request for partition could be inferred from the requesting party's general prayer for relief in a divorce suit. Johnson, 550 So.2d at 419-20. See also Smith v. Smith, 607 So.2d 122, 127 (Miss.1992)(noting Johnson's notice pleading analysis approvingly). A far more specific request existed in the present suit: "that this Court order that the marital home be offered for sale on the open market for a fair market value," which is more than sufficient. See Rushing v. Rushing, 414 So.2d 429, 431 (Miss.1982) ("Our statutes in reference to the partition of real estate ... give the right of partition by decree of the chancery court upon the application of any tenant in common or joint tenant.").
¶ 35. This caselaw makes clear that a partition may be sought regardless of policies encouraging marriage and may be pursued simply by filing an application in chancery court. On March 2, 2001, Mr. Myers filed such an application. He responded to Mrs. Myers' motion for a temporary hearing first by acquiescing to Mrs. Myers' temporary use and possession of the marital home. Then however, he requested "that this Court order that the marital home be offered for sale on the open market for a fair market value (if the foreclosure of March 12, 2001, can be postponed)." The lower court entered a temporary order awarding Mrs. Myers use and possession of the home, and deferred all issues not addressed until the final hearing. The request for sale remained pending.
¶ 36. A request for temporary support and a separate maintenance action constitute a practical recognition that "the spouses are no longer living together as husband and wife and support for separate households must exist." Pittman v. Pittman, 791 So.2d 857, 864 (Miss.Ct.App.2001). Each "could be followed by a divorce or a reconciliation." Id. For purposes of a partition request, therefore, the two are indistinguishable.
¶ 37. I do not find that the chancellor's consideration of separate maintenance somehow expunged the record of Mr. Myers' temporary support pleadings. Those pleadings were still on file and had not in any manner that I can determine *227 been withdrawn. Nothing in the record suggests that the divorce action had been abandoned by Mr. Myers. Moreover, the request for sale during the temporary support hearing specifically was for the chancellor to consider at a time when relief other than a divorce was being ordered.
¶ 38. The chancellor had sufficient pleadings to order the sale. Nothing is gained by demanding more. I would affirm.
McMILLIN, C.J., THOMAS AND MYERS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.