550 So.2d 416 (1989)
Kenneth Arnold JOHNSON
v.
Rebecca Ann Allen JOHNSON.
No. 07-58779.
Supreme Court of Mississippi.
October 11, 1989.
*417 Gary L. Honea, Magnolia, for appellee.
Anne V. Winter, Butler Snow Firm, Jackson, Norman B. Gillis, III, Gillis & Gillis, McComb, for appellee.
Before DAN M. LEE, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Today's appellant asks that we review a chancery court's divorce decree and incident thereto the court's exercise of its equitable discretion in dividing marital assets and providing future support and maintenance of the wife and children. We find the decree sensitive to the particular facts before the Court and the relative needs of the affected persons. We affirm.

*418 II.
On January 22, 1971, Kenneth Arnold Johnson and Rebecca Ann Allen Johnson were married in Walthall County. Of this marriage four children were born: Joy Denice Johnson, born February 9, 1974; Buffie Roseann Johnson, born September 7, 1976; Heather Dawn Johnson, born July 15, 1979; and Kenneth Arnold Johnson, Jr., born November 10, 1981.
Over the years the parties experienced more than occasional domestic intranquility. On January 22, 1987, their sixteenth wedding anniversary, Rebecca and Kenneth had quite a squabble at the end of which Rebecca says Kenneth cursed her, threw her about six feet onto the floor and jumped on top of her. He then made a fist and threatened to hit her, but stopped short as the four children were, by this time, crying and screaming hysterically, the proverbial last straw, Rebecca says. The next day Rebecca moved out.
Four days later, Kenneth filed a complaint in the Chancery Court of Walthall County, Mississippi, asking temporary and permanent custody of the children. Kenneth's grounds were that Rebecca "deserted the marital domicile for no cause, and has, to date, not been heard from by Plaintiff [Kenneth]."
Rebecca filed an answer and counterclaim, admitting that she had left the marital home, but stating as her reason Kenneth's abusive behavior. In her counterclaim Rebecca asked for divorce on grounds of habitual cruel and inhuman treatment, for custody of the four minor children, child support, alimony, costs and attorney's fees. Rebecca subsequently amended her counterclaim and sought a division of the parties' personal property and a sum of money for her interest in the real property accumulated during the course of the marriage.
On May 27, 1987, the case went to trial. In addition to the incident described above, Rebecca told of other times when Kenneth was physically violent toward her. More relevant to today's issues, the evidence reflected that in October of 1982 Kenneth, who had worked as a truck driver, sustained a back injury in an accident. Kenneth had thereafter asserted a tort claim and in the end had received a settlement of approximately $220,000.00. He has a twenty percent permanent partial disability. At the time of Kenneth's injury the Johnsons lived in a modest home sitting on a two-acre lot which they held as joint tenants with rights of survivorship. They had purchased the home in 1981 for $35,000.00 of which $31,500.00 had been financed. Following receipt of his settlement, Kenneth paid off the balance of the first mortgage on the home and, in addition, invested a substantial sum in renovations and improvements to the home.[1] Kenneth was unable to resume his job as a truck driver, and, after he recovered he purchased an interest in A-1 Heating and Cooling, an air conditioning business in McComb, in part with the proceeds of his settlement. Kenneth also bought sixteen acres of land adjacent to the home and a 1986 Massey Ferguson tractor. In consequence of these purchases and other odds and ends expenditures, none of the settlement money is left.
By judgment entered August 28, 1987, the Court granted Rebecca's divorce on grounds of habitual cruel and inhuman treatment, Miss. Code Ann. § 93-5-1 [Seventh] (1972), and placed the four children in her custody subject to reasonable visitation rights in Kenneth. The Court ordered Kenneth to pay child support of $80.00 per week for the support of all of the children together and, in addition, ordered Kenneth to procure and maintain hospital and medical insurance for the children and to pay one-half of all hospital and medical expenses not covered by insurance. The Court awarded no alimony as such but did order the marital domicile and the two-acre lot on which it sits appraised by Doug *419 Rushing Realty of Tylertown and then directed the Chancery Clerk to hold a sale of the property. Of significance, the Court ordered that
After the filing of the appraisal, the sale is to be held in abeyance for thirty (30) days in order for the parties to attempt to work out a mutually acceptable division of said property. If an agreement is not reached within thirty (30) days, the sale will be held by the special commissioner.
The Court then ordered that after deduction of all costs of sale, the proceeds "shall be divided equally between the parties."
Kenneth now appeals this judgment.

III.
This appeal is about money. Kenneth makes no complaint regarding the granting of the divorce or the custody order. He does challenge the order of the Chancery Court that the home be partitioned and in that regard he asserts two grounds, first, that Rebecca's pleadings are inadequate and, second, that partition should not be ordered because the home was paid for with monies he received from the settlement of a personal injury action. He complains of his child support payments as well.

A.
A preliminary point should be noted. A married woman may sue her husband for partition of jointly owned property. This rule is a function of the language and policy of our Married Women's Act. Miss. Code Ann. §§ 93-3-1, 93-3-3 (1972). Section 93-3-1 provides that a married woman may own property the same as any other person and that she may "sue and be sued, with respect to all of the rights and liabilities incident thereto, as if she were not married." Section 93-3-3 then provides that "husband and wife may sue each other." This statute means precisely what it says. See Burns v. Burns, 518 So.2d 1205, 1209-10 (Miss. 1988); Trigg v. Trigg, 498 So.2d 334, 336 (Miss. 1986).
Rebecca is entitled to proceed in the Chancery Court against Kenneth for partition of jointly held property. If she can proceed separately to this effect, she can certainly proceed in this manner and seek this relief as an incident to her action for divorce and our first question is whether by her pleadings she has given Kenneth fair notice that she was asking such relief.

B.
Kenneth argues that Rebecca's pleadings were such that the Chancery Court had no authority to order partition of the home. It is true that we do not find the word "partition" in Rebecca's pleadings. In her counterclaim for divorce, Rebecca did ask the court to order Kenneth to pay her "a reasonable sum to be paid ... as permanent alimony" and "for such other relief, either general or special, to which she may be entitled in equity." Thereafter, Rebecca was allowed to and did file an amendment to her counterclaim for divorce wherein she alleged
The parties hereto jointly own a home and real property located in Walthall County, Mississippi.... Due to the work and effort of counter-plaintiff over the course of the marriage, counter-plaintiff has an equitable interest in said real ... property which has accumulated during the course of the marriage and counter-plaintiff should be compensated for her equity and interest in said property.
The amendment in addition asks that Rebecca "be awarded a sum of money ... so as to compensate for her interest in said marital property of the parties." Her prayer for general relief is then repeated.
Rule 8(a)(2), Miss.R.Civ.P., provides that "a pleading which sets forth a claim for relief ... shall contain ... a demand for the relief to which [the pleader] deems himself entitled." The rule is without a magic words requirement. Rule 54(c), in relevant part, provides that
Every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled by the proof and which is within the jurisdiction of the court to grant, even if the party has not demanded such relief in his pleading; *420 however, final judgment shall not be entered for a monetary amount greater than that demanded in the pleadings or amended pleadings.
As there is no statutory procedure in conflict with these two rules, they govern divorce proceedings. See Mayoza v. Mayoza, 526 So.2d 547, 548 (Miss. 1988).
Rebecca's counterclaim for divorce, as amended, asks alimony and then asserts an interest in the home, demanding relief in the form of a "sum of money." Any reasonable defendant who can read would know that Rebecca was asking the court to award her a monetary amount equivalent to alimony to which she was reasonably entitled in law, or in a reasonable amount by reference to her interest in the real property, or both. See Cheatham v. Cheatham, 537 So.2d 435, 440 (Miss. 1988); Cain v. Robinson, 523 So.2d 29, 34 (Miss. 1988). More to the point, Rebecca's pleadings plainly advised Kenneth that she was looking to the marital residence as a source of a monetary award.

C.
We turn to the merits. Our law has conferred upon the Chancery Court the authority to order one such as Kenneth to pay money to Rebecca for her maintenance and support after the divorce, notwithstanding that she put not a penny into the couple's assets. The law labels such payments alimony and the criteria for their assessment and amount are familiar. See McNally v. McNally, 516 So.2d 499, 501 (Miss. 1987); Bunkley & Morse's Amis on Divorce and Separation in Mississippi § 6.08 (1957). In the exercise of its sound discretion, the court may order alimony payments in a lump sum or in a fixed amount payable in installments. Tutor v. Tutor, 494 So.2d 362, 364-65 (Miss. 1986); Schilling v. Schilling, 452 So.2d 834, 835-36 (Miss. 1984).
Beyond this, the Chancery Court certainly has the authority to order an equitable division of jointly accumulated property and in doing so to look behind the formal state of title. See, e.g., Jones v. Jones, 532 So.2d 574, 579-81 (Miss. 1988); Regan v. Regan, 507 So.2d 54, 56 (Miss. 1987); Spearman v. Spearman, 471 So.2d 1204, 1205-06 (Miss. 1985); Watts v. Watts, 466 So.2d 889, 890-91 (Miss. 1985). The Court seeks equity by reference to the economic contribution made by each to the acquisition and maintenance of the property. Regan v. Regan, 507 So.2d at 56; Pickle v. Pickle, 476 So.2d 32, 34 (Miss. 1985), and in doing so has no authority to disregard a spouse's economic contributions just because they were not monetary in form. In Pickens v. Pickens, 490 So.2d 872 (Miss. 1986), we said:
Services and in kind contributions have an economic value as real as cash contributions. In such situations, where one party to the relationship acts without compensation to perform work or render services to a business enterprise or performs work or services generally regarded as domestic in nature, these are nevertheless economic contributions. Cf. Tedford v. Dempsey, 437 So.2d 410, 422 (Miss. 1983). They are to be valued by reference to the cost of similar services in the marketplace.
490 So.2d at 876.
Notwithstanding these considerations, Kenneth argues that the house should be his. He says the partition order should be reversed because the house was in fact paid for, together with its improvements, by cash from his pocket, by and large the proceeds of his personal injury settlement. In making this argument, he relies heavily upon Regan v. Regan, 507 So.2d 54 (Miss. 1987), and in doing so gives Regan an inappropriately wooden reading.
As in Regan we begin with the (rebuttable) presumption that the co-owners of jointly held property are equal co-contributors and owners. Regan, 507 So.2d at 56; Reeves v. Reeves, 410 So.2d 1300, 1303 (Miss. 1982). Where in acquiring such property one spouse has made substantially larger cash contributions, we presume that spouse has given a one-half interest to the other. Miller v. Miller, 298 So.2d 704, 706 (Miss. 1974). Substantial evidence to the contrary may rebut these presumptions.
*421 Regan does bear a superficial similarity to today's case. Regan did concern the proceeds of a personal injury settlement. Unlike this case, however, the court below in Regan had ordered the ex-husband to pay $225.00 per month in permanent and periodic alimony and the question was to what extent, in addition to that, the wife was entitled to a portion of the funds reflected by a $107,000.00 certificate of deposit. Moreover, in Regan the wife was seeking a property division of the entire proceeds of the personal injury settlement (or, at least, what was left at the time of the divorce again, over and above alimony). It was in that context that Regan reversed a chancery court's fifty-fifty division and remanded for a consideration of the relative economic (though not necessarily monetary economic) contributions made by each party to the acquisition and maintenance of the property.
Here the Chancery Court's order affects only the marital home and the two-acre plot it sits on. Kenneth is left with sixteen adjoining acres and as well the $37,000.00 tractor he purchased. Unlike Regan, the Court awarded no permanent alimony as such, no doubt because of the financial circumstances of the parties.
Given the facts of this case, the Chancery Court would have had the authority to order Kenneth to make a lump sum alimony payment to Rebecca in a monetary amount representing roughly half the value of the house. Such order could even have been secured by a lien on Kenneth's property and, quite likely, would have had the practical effect of requiring him to sell or at least mortgage something. See Jones v. Jones, 532 So.2d 574, 580 (Miss. 1988); Watts v. Watts, 466 So.2d 889, 981 (Miss. 1985). Given the fact of a sixteen year marriage in which each of these parties quite apparently gave and took quite a bit, we may only hold the economic realities of the judgment below and, as well, its form well within the Court's authority. Robinson v. Irwin, 546 So.2d 683, 685 (Miss. 1989); Skinner v. Skinner, 509 So.2d 867, 869 (Miss. 1987); see also Cheatham v. Cheatham, 537 So.2d 435, 438-39 (Miss. 1988).
There are two practical points that should be noted. First, the home is adjacent to the residences of members of Kenneth's family. This makes unfair and unrealistic any suggestion that Rebecca and the children remain there. On the other hand, the provisions of the partition order have been carefully crafted so that Kenneth does not have to lose his home. The order for partition provides that an appraisal be made and that the parties have thirty days thereafter before any sale will take place. The obvious purpose and effect of this thirty-day grace period is to give the parties a chance to work out an arrangement whereby Kenneth can purchase Rebecca's interest, all against the backdrop of the certain knowledge that she will get one-half of the proceeds of the sale if the sale is ever held. Assuming that rational self-interest may somehow prevail over pride and prejudice, we cannot help but believe that Kenneth will take advantage of this window he has been given and preserve his home and farm intact, and at the same time provide to Rebecca what is in effect a combination lump sum alimony payment and reasonable property division.

IV.
Kenneth next challenges the Chancery Court's order that he pay $80.00 per week in child support. The Chancery Court awarded custody of the four minor children to Rebecca and ordered Kenneth to pay child support of $80.00 per week and continue to provide hospitalization and medical insurance, available through his business, for the children.
The record indicates that Rebecca earns about $600.00 per month. Kenneth owns an air conditioning business which he purchased with a part of his settlement money and he testified that he draws $200.00 per week. In addition, as indicated above, Kenneth owns sixteen acres of land and, of course, has a one-half interest in the home.
We have no authority to reverse an award of child support absent a clear abuse of discretion. Williams v. Williams, 528 So.2d 296, 297 (1988); Harrell *422 v. Harrell, 231 So.2d 793, 796 (Miss. 1970). The Chancery Court took into consideration the interests of the children and each party's relevant income. This amount does not visit hardship upon Kenneth such that we should hold the support order an abuse of discretion. See Williams, 528 So.2d at 297-298.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ANDERSON, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
SULLIVAN, J., not participating.
NOTES
[1] There is a dispute, nowhere resolved in the record, regarding the amount Kenneth spent on these improvements and renovations. He maintains that he spent between $80,000.00 and $90,000.00 on the home over and above the $31,500.00 paid on the first mortgage. Rebecca claims that the total investment in the home is $80,000.00 to $90,000.00. As nothing turns on the point, we find it unnecessary to resolve this issue.