599 So.2d 569 (1992)
Lucille J. GAMMAGE
v.
John L. GAMMAGE.
No. 90-CA-1090.
Supreme Court of Mississippi.
April 29, 1992.
Ray Charles Evans, Forest, for appellant.
No brief filed for appellee.
Before HAWKINS, P.J., and SULLIVAN and McRAE, JJ.
HAWKINS, Presiding Justice, for the Court:
Lucille J. Gammage appeals from a final judgment entered on September 7, 1990, by the Chancery Court of the Second Judicial District of Jasper County granting her counterclaim for divorce against her husband on the statutory ground of habitual cruel and inhuman treatment. On appeal she presents three issues dealing with the denial of periodic or continuing alimony, the denial of attorney's fees, and the refusal of the chancellor to order John L. Gammage to purchase Lucille's one-half (1/2) interest in the marital home.
We affirm all issues save for the one involving the chancellor's denial of periodic or continuing alimony which we reverse and remand with directions to award Lucille Gammage periodic alimony in the *570 amount of Two Hundred Dollars ($200.00) per month, retroactive from September 7, 1990, the date of final judgment.

I. FACTS
Lucille J. Gammage [hereinafter "Lucille"] and John L. Gammage [hereinafter "John"] were married in Bay Springs, Mississippi, on May 6, 1967. Four children were born of this marriage: Nannette Rachell Gammage and Annette Rachell Gammage, emancipated twin females born September 1, 1967; Kim Yolanda Gammage Martin, a female emancipated by marriage, born May 18, 1970, and John P. Gammage, an unemancipated male and minor child born November 2, 1973. The care and custody of John, the sixteen (16) year old minor child, is not an issue on appeal.
During the course of their turbulent twenty-two (22) year marriage, the parties were involved in three (3) prior legal proceedings brought by Lucille for divorce and separate maintenance. These proceedings took place in 1974, 1984, and 1986, and all actions were ultimately dismissed. Their difficulties notwithstanding, Lucille and John lived together intermittently as husband and wife until finally separated on or about December of 1987.
On December 15, 1988, John filed his "Complaint For Divorce" in the Chancery Court of the Second Judicial District of Jasper County on the statutory ground of habitual cruel and inhuman treatment or, alternatively, on the ground of irreconcilable differences. John sought permanent custody and control of the minor children, but made no request for child support. He also sought, as lump sum alimony, fee simple ownership of the marital home located in the Second Judicial District of Jasper County and owned jointly by John and Lucille.
On May 2, 1989, Lucille filed her answer to John's complaint and denied he was entitled to any relief. Lucille also counterclaimed for divorce on the ground of habitual cruel and inhuman treatment and uncondoned adultery or, alternatively, on the ground of irreconcilable differences. In her counterclaim Lucille sought custody of the minor children, child support, permanent alimony, an order from the lower court requiring John to purchase her interest in the jointly owned marital home, and attorney's fees.
John filed an answer to Lucille's counterclaim on July 18, 1989. He denied all claims and requested attorney's fees. Following the usual discovery, trial of this cause began on July 20, 1989. On July 21, the last day of the July, 1989, term, the chancellor, with an awareness the trial was not complete, entered a temporary order adjudicating John P. Gammage a neglected child and finding that both John and Lucille were unfit for custody of the minor child. Under the provisions of the temporary order, the custody of John P. Gammage was awarded to the Jasper County Welfare Department for placement in foster care. William Kevin Talley, attorney-at-law, was appointed guardian ad litem.
The temporary order also required the welfare departments of Jasper and Newton counties to determine the child's educational needs and to conduct home studies on John, Lucille, and the child's paternal grandparents. John L. Gammage was ordered to pay to the Welfare Department $400.00 per month child support, while Lucille Gammage was ordered to pay $75.00 per month. By virtue of the final judgment entered thirteen (13) months later on September 7, 1990, temporary custody of the child was to remain with the Welfare Department pending further orders of the court.
The trial was finally completed on March 13, 1990. The chancellor awarded a divorce to Lucille on the ground of habitual cruel and inhuman treatment and dismissed John's complaint for divorce with prejudice. He also held:
(1) that all personal property then possessed by each party in the wake of their separation would remain their separate property;
(2) the paramount right to the marital home and the one-half (1/2) acre of real property upon which it sits would not be granted to either party;

*571 (3) it was inappropriate to award alimony to the defendant at that time;
(4) the defendant's claim for attorney's fees would be denied; and
(5) all provisions of the temporary order entered on July 21, 1989, as to custody and visitation would remain in force and effect.
The chancellor stated he would address the issue of permanent custody at a later date. He also awarded the guardian ad litem $600.00 for his services to the court. He ordered John to pay $450.00 of this amount while Lucille was ordered to pay the sum of $150.00.

II. DISCUSSION
Lucille claims the chancellor was manifestly wrong in denying her claims for alimony and attorney's fees. She also contends the chancellor erred when he failed to order John to purchase Lucille's undivided one-half (1/2) interest in the marital home jointly owned by both parties.

A. ALIMONY
Lucille contends the denial of her claim for permanent alimony, i.e., "periodic" or "continuing" alimony as opposed to "fixed" or "lump sum" alimony [See Maxcy v. Estate of Maxcy, 485 So.2d 1077 (Miss. 1986)], constitutes manifest error. This claim is based largely upon a post-divorce assessment of her reasonable needs. According to Lucille, she is in desperate need since the proof established that her monthly income as a nursing assistant receiving minimum wages was exceeded by her monthly expenses.
During trial Lucille requested periodic alimony in the amount of $200.00 per month, which she succinctly stated would be sufficient to help her take care of herself. On appeal Lucille asks this Court to award alimony retroactive from April 1, 1990, at a rate of $200.00 per month until her death, remarriage, or the death of John Gammage.
In his bench ruling delivered March 13, 1990, and his final judgment entered September 7, 1990, the chancellor, while recognizing the dearth of testimony dealing with Lucille's monetary contributions during the twenty-two (22) year marriage, found as a fact she did make monetary contributions to the marriage while the parties were together. He also found as a fact that while both parties contributed to the marital difficulties, a majority of those difficulties was caused by John's habitual cruelty. Nevertheless, the chancellor, taking into consideration the testimony presented on March 13, 1990, concerning the marriage, as well as the financial status of both parties at the close of trial, did not feel it was appropriate at this time to award alimony in any form.
Lucille's request for clarification of the chancellor's decision to deny alimony altogether is found in the following colloquy:
MR. EVANS:
Point of clarification, Your Honor. Is the Court denying alimony all together, or is the Court holding the amount of alimony in abeyance?
THE COURT:
The Court is going to deny an award of alimony. The Court is of the opinion that the estates of both of these parties are similar enough that an award of alimony is not necessary. Both of these parties own a home which has substantial equity; and, being jointly owned and neither party being given paramount right, it should be partited and sold, at which point they would both reap quite a substantial sum of money.
MR. EVANS:
Is Your Honor also considering the earning capacity of the individual parties, as to the reference of $41,000.00 as opposed to $7,000.00?
THE COURT:
The Court has taken that into consideration.
MR. EVANS:
And is that the final order of the Court?
THE COURT:
Unless I change my mind between now and the time I sign it. Mr. Tally, do *572 you know of anything else we need to cover?
MR. TALLY:
No, sir.
THE COURT:
Mr. Gammage?
MR. GAMMAGE:
No, sir.
MR. EVANS:

Your Honor, the evidence that we presented in reference to Mrs. Gammage's financial circumstances would indicate that she not  barely existing now on her present wages. She, as stated in her testimony, still owes some additional rental monies and the money that she did have is going towards child support; and based upon her limited income, the Court has imposed an additional $150.00 requirement. Now, we would contend that, under the equitable principles, the Chancery Court is the court of equity and a court of right; and it would be unequitable to, quote, unquote, "deprive" her of the very means of having a means of shelter over her head, which is the basis of what has happened, with all due respect to the Court. If the Court would examine the personal  the statement, personal declaration statement of Mrs. Gammage, the Court can see, and also by her income tax return what her actual earnings were during the time periods. In essence, she is being deprived of the very means of shelter over her head.

THE COURT:
The Court, in making this decision, has considered the elements set forth in Tu[t]or and Brabham and is of the opinion that, based upon those elements, based upon later cases dealing with the disparity in the estates of these parties, based upon the testimony as it developed as to the actions of these parties during the course of this marriage, is of the opinion that an award of alimony is simply not called for; and, therefore, that will be denied. [Emphasis supplied]
"Whether to award alimony, and the amount to be awarded, are largely within the discretion of the chancellor." Cherry v. Cherry, 593 So.2d 13, 19 (Miss. 1991) citing Brendel v. Brendel, 566 So.2d 1269 (Miss. 1990). See also Miss. Code Ann. § 93-5-23 (Supp. 1991); Horton v. Horton, 269 So.2d 347, 349 (Miss. 1972).
The chancellor awarded a divorce to Lucille on the ground of John's habitual cruel and inhuman treatment. Alimony was denied apparently because the chancellor deemed Lucille to have been guilty of similar acts that nearly equaled those committed by John and because there was no disparity between estates. We think the chancellor was manifestly wrong and abused his judicial discretion in denying periodic alimony because, inter alia, the duration of this marriage was twenty-two (22) years, John Gammage has a healthy income and is able to afford alimony in a reasonable amount, and some form of alimony is required in order to prevent Lucille from being in desperate need. Even an offending spouse, which Lucille is not, might well be entitled to alimony under these circumstances. See e.g., Retzer v. Retzer, 578 So.2d 580, 593 (Miss. 1991); Wires v. Wires, 297 So.2d 900, 903 (Miss. 1974); Rainey v. Rainey, 205 So.2d 514, 515 (Miss. 1967).
This Court has long recognized there are certain factors which are to be considered by the chancellor in fixing alimony amounts. These factors are set forth in Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147, 153 (1955), where we stated:
The lower court should award reasonable sums for alimony ... in light of conditions as they now prevail, including (1) the health of the husband and his earning capacity; (2) the health of the wife and her earning capacity; (3) the entire sources of income of both parties; (4) the reasonable needs of the wife; (5) the reasonable needs of the child; (6) the necessary living expenses of the husband; (7) the estimated amount of income taxes the respective parties must *573 pay on their incomes; (8) the fact that the wife has free use of the home furnishings and automobile; and (9) such other facts and circumstances bearing on the subject that might be shown on the evidence.
See also Tutor v. Tutor, 494 So.2d 362, 364 (Miss. 1986). While the Brabham factors have been instrumental in fixing alimony amounts, they are equally useful in determining whether or not to award alimony in the first instance. The chancellor obviously considered the factors in Brabham and Tutor but, in our opinion, reached the wrong result in the wake of his analysis. We turn now to a brief look at the Brabham criteria.

1. Health of the Husband and his Earning Capacity
John Gammage is forty-two (42) years old and has no significant health problems. Aside from a history of ulcers, which healed nicely following his separation from Lucille, and high blood pressure, for which he takes daily medication, John is in reasonably good health. There is no evidence demonstrating his health would interfere with his ability to work.
John is employed by Georgia Pacific Corporation as a Maintenance Technician. His adjusted gross income in 1988 was $37,554.00, for which he was assessed $6,795.00 in federal income taxes. In 1989 John's gross income was $41,000.00.
This factor favors Lucille.

2. Health of the Wife and her Earning Capacity
By contrast, medical records from Jasper General Hospital reflect that Lucille, who is forty-one (41) years of age, has a history of chronic peptic ulcers and depression precipitated largely by her marital woes. These maladies extend back to 1978. Lucille has been hospitalized on a number of previous occasions.
Lucille, who did not work prior to her separation from John, has been employed since October 3, 1988, as a nurse assistant with Conva-Rest of Newton Nursing in Newton, Mississippi. She works forty (40) hours a week at minimum wage and takes home approximately $221.00 twice a month. Her monthly income is $442.00 a month. Her adjusted gross income for the year 1989 was $7,183.00. Cf. Wood v. Wood, 495 So.2d 503, 506 (Miss. 1986).
This factor also favors Lucille.

3. Entire Sources of Income of Both Parties
The source of John's income was his employment with Georgia Pacific as a maintenance man where his wages were over $37,000.00 in 1988. He also earned $121.00 in interest income in 1988.
The sole source of Lucille's income was her employment with Conva-Rest where she receives minimum wages.
Both John and Lucille own, as tenants by the entirety with full right of survivorship, an undivided one-half (1/2) interest in the marital home which was purchased in 1971 and was apparently occupied by John at the time of trial. At the present time the home is not a source of income for either party.
This factor favors Lucille.

4. The Reasonable Needs of the Wife
At the time of trial, Lucille was living alone in Newton, Mississippi, in the Quail Run Apartments where her monthly rent was $200.00 a month. Lucille had received notice from the Farmers Home Administration (FmHA) that the monthly rent would be increased to $225.00 effective April 1, 1990.
Lucille's other monthly expenses were $20.00 for food (an incredibly paltry amount); $35.00 for electricity; $28.00 a month to Tower Loans; $50.00 a month to Ralph Gray Enterprises; $19.00 a month to Electric City; $30.00 a month to Dress for Less; $75.00 a month child support for her minor son, John P. Gammage; and $60.00 a month for transportation.
Lucille had received a loan from Tower in order to pay her back rent. The monthly payment to Ralph Gray was for furniture and a bedroom suite. The monthly payment to Electric City was for a typewriter *574 and television set, and the monthly payment to Dress for Less was for clothing. The outstanding balances on these accounts were $208.00, $800.00, $600.00, and $116.00, respectively.
Thus, in March of 1990 Lucille's monthly expenses totaled $517.00 while her monthly income was only $442.00. Her expenses exceeded her income by $75.00. After the $25.00 increase in apartment rent, Lucille's monthly expenses would exceed her income by $100.00.
We certainly cannot conclude from these facts and figures that Lucille was engaged in reckless extravagance. This factor weighs heavily in favor of Lucille.

5. The Reasonable Needs of the Child
The chancellor, by virtue of his temporary order entered October 4, 1989, ordered that custody of the minor child be placed with the Jasper County Welfare Department and further ordered John and Lucille to pay $475.00 a month child support.
This factor, which favors neither party, is applicable only to the extent that John was paying monthly child support in the amount of $400.00 pursuant to the chancellor's temporary order while Lucille was paying $75.00 a month child support by virtue of the same order. Plaintiff was also required to provide health insurance for the minor child through his employment.

6. The Necessary Living Expenses of the Husband
The record does not reflect John's monthly living expenses. It does indicate that John was making annual payments on the marital home of $1,031.00 which translates into monthly payments of approximately $86.00. As of March 13, 1990, John owed $100.00 to Wayne's Tire Shop; $700.00 to Otasco (appliances and household furnishings); $6,000.00 to $9,000.00 to Chrysler Corporation (Jeep Cherokee); $1,600.00 to the Jasper County Bank (payment of taxes to IRS); $700.00 to Central Credit Corporation (loan for payment of house note for twelve [12] months); an undisclosed amount to Money, Inc., and approximately $10,000.00 to FmHA (marital home).
This factor favors Lucille because John has a healthy income which enables him to make the monthly payments he has generated. Unlike Lucille, it does not appear he is in desperate need.

7. The Estimated Amount of Income Taxes the Parties Must Pay
Lucille earned $7,183.00 in 1989 and paid $313.00 in federal income taxes. She did not owe any state tax.
In 1989 John earned $41,000. The amount of state and federal income tax paid that year is not reflected by the record.
John earned $37,554.00 in 1988. He paid $6,795.00 in federal income taxes and $1,368.00 in state income taxes. Interestingly, in 1988 John Gammage paid a total of $8,163.00 in state and federal income taxes. In 1989 Lucille earned $7,183.00. The amount of taxes paid by John in 1988 exceeded Lucille's entire 1989 gross income by $980.00.

8. The Fact the Wife has Free Use of the Marital Home, Its 
Furnishings, and Automobile
The parties own the marital home and one-half (1/2) acre of land as joint tenants by the entirety. This property is subject to a deed of trust held by Farmers Home Administration.
In January of 1988 Lucille left the marital home in Jasper County because of her husband's acts of cruelty. John moved back into the home after Lucille moved out.
Lucille does not own an automobile and was spending $60.00 a month for transportation expenses.
This factor, as do most of the other factors, belongs on Lucille's side of the slate.
A Brabham analysis clearly favors Lucille, the nonoffending spouse who was granted the divorce because of John's wrongdoing. The facts demonstrate she has been left in need. The chancellor found that Lucille had made monetary contributions *575 to the marriage during the time the parties were together. Under the facts of this case, we think the chancellor abused his discretion and was manifestly wrong in denying periodic alimony. As to reasonable needs, "[t]he wife is entitled to a support corresponding to her rank and condition in life, and the estate of her husband." Jenkins v. Jenkins, 278 So.2d 446, 449-50 (Miss. 1973).
Lucille did not request an exaggerated amount of alimony. The judgment of the lower court denying the defendant any award of periodic alimony is reversed and the case is remanded with directions to award Lucille Gammage periodic alimony in the amount of Two Hundred Dollars ($200.00) per month, retroactive from September 7, 1990, the date of the final decree.

B. THE MARITAL HOME
Lucille contends the chancellor erred in failing to order division of the marital home. Among the relief sought by Lucille in her counterclaim for divorce was an order by the chancellor directing John Gammage to purchase, at fair market value, Lucille's equitable interest in the marital home. Relying largely upon Johnson v. Johnson, 550 So.2d 416 (Miss. 1989), she now asks this Court to enter an order directing the chancellor to partition the one-half (1/2) acre of land upon which the marital home is situated and further directing that the proceeds from a partition sale be divided equally among both parties. Lucille, in effect, seeks from this court lump sum alimony in an amount representing one-half (1/2) the value of the marital home.
In his bench ruling issued on March 13, 1990, the chancellor opined: "Both of these parties own a home which has a substantial equity; and, being jointly owned and neither party being given paramount right, it should be partied and sold, at which point they would both reap quite a substantial sum of money."
Under the unique and singular facts of this case, we cannot say the chancellor was manifestly wrong in deciding against granting unto either party the paramount right to the marital home and the one-half (1/2) acre of real property. While the chancellor, by virtue of Johnson, supra, may have had the authority to order a partition and sale of the home and the one-half (1/2) acre and to order equal distribution of the proceeds, his failure to do so in this case cannot be said to have been manifestly wrong.
This is especially true where, as here, the issue of permanent custody of the minor child had not been resolved at the time of final judgment; rather, the chancellor succinctly indicated in his judgment of divorce this issue would be fully addressed at a later date. In the meantime, temporary custody of the child would remain with the Jasper County Welfare Department pending the conduct by the department of home studies and the child's educational needs. Thus, the chancellor made it perfectly clear that placement of permanent custody with either of the two parents remained a viable option.

C. ATTORNEY'S FEES
This issue involves the awarding of attorney's fees in domestic relation cases to salaried attorneys employed by East Mississippi Legal Services. According to Lucille there is no legal impediment prohibiting the awarding of attorney's fees to Legal Services. We need not address the question of whether or not legal services attorneys are entitled to attorney's fees in a domestic relation case because the proof, in any event, was defective.
Lucille requested in her counterclaim that John be ordered to pay "a reasonable attorney fee." She was represented in the divorce proceedings by East Mississippi Legal Services. Her lawyer acknowledges in her brief, and he also acknowledged during trial, that Lucille has not paid any legal fees and has not been charged any fees.
There is very little, if anything at all, contained in the official record concerning the identity and status of East Mississippi Legal Services Corporation or the purpose of its existence. The record itself is devoid of matters concerning its financial guidelines, litigation costs, fees, salaried employees, and other policies and procedures. All of this information is attached to Lucille's appellate brief in the form of Appendix I *576 through Appendix IV, upon which trial counsel strongly relies to support his claim for attorney's fees. Regrettably, these papers cannot be considered here. Saucier v. State, 328 So.2d 355, 357 (Miss. 1976). See also Shelton v. Kindred, 279 So.2d 642, 644 (Miss. 1973); Wortham v. State, 219 So.2d 923, 926-27 (Miss. 1969) [affidavit contained in appellant's brief could not be considered].
By virtue of the individual facts found in this case, we are satisfied the chancellor's denial of attorney's fees to Lucille and to East Mississippi Legal Services was neither manifestly wrong nor an abuse of judicial discretion.
This Court is persuaded, on the other hand, the denial of periodic or continuing alimony was manifestly wrong. Accordingly, the cause is reversed on the issue of periodic alimony and remanded for proceedings not inconsistent with this opinion.
AFFIRMED IN PART, REVERSED AND REMANDED IN PART WITH DIRECTIONS TO AWARD LUCILLE J. GAMMAGE TWO HUNDRED DOLLARS ($200.00) PER MONTH PERIODIC ALIMONY, RETROACTIVE FROM SEPTEMBER 7, 1990.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
DAN M. LEE, P.J., dissents without written opinion.