# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-00636-SCT

*CARL A. BISHOP*

*v.*

*EDITH BISHOP*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/31/96 |
| TRIAL JUDGE: | HON. TIMOTHY ERVIN |
| COURT FROM WHICH APPEALED: | UNION COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOSEPH C. LANGSTON |
| ATTORNEY FOR APPELLEE: | MICHAEL MALSKI |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART- 9/4/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/25/97 |

**BEFORE SULLIVAN P.J., PITTMAN AND BANKS, JJ.**

**PITTMAN, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

This case is an appeal from the Chancery Court of Union County, Mississippi. The Appellee, Edith Bishop, filed a Complaint for Divorce against Carl A. Bishop on May 4, 1995. On June 3, 1995, the Honorable Timothy E. Ervin entered a Judgment for Divorce. The parties had agreed to a divorce on the grounds of irreconcilable differences and had submitted the issue of division of marital property to the Chancellor. It is from this division of property that Carl A. Bishop now appeals.

## STATEMENT OF THE FACTS

Carl and Edith Bishop were married in Lee County on June 11, 1990. They separated on or about the 28th or 29th of April, 1995, while living in Jerico, Union County, Mississippi. This was the second marriage for both parties and produced no children. Edith filed a complaint for divorce on May 4, 1995.

Prior to marriage, Edith was living in her home in Baldwyn, Prentiss County, Mississippi. At the time of the marriage, Edith owned and operated an independent beauty shop with a monthly income of $300-$400 per week.

The Bishops began living together some six-to-nine months prior to their marriage. They lived in the aforementioned home in Baldwyn. Carl assisted Edith with monthly house payments prior to their marriage. The Bishops subsequently moved into a converted barn owned by Carl's brother. Edith, at Carl's direction, sold her home and beauty shop in Baldwyn. Edith stated that Carl told her he did not want her cutting men's hair and she did not have to work anymore. There was testimony from Edith that she helped Carl in his business during this time. She stated that he was a used car dealer and also had a used parts place. She told the court that often times she did paperwork, ran car parts to people, delivered cars, answered the phone and other various jobs, all for no monetary compensation. However, Carl denied that Edith did any of these things.

The couple lived in the converted barn for four or five months while they were building a house on property Carl owned in Jerico, Union County. Previously, Carl owned a house on this property but it was destroyed by fire. Carl received insurance benefits as a result of the fire.

There was conflicting testimony as to who paid for the house being built in Jerico. Edith testified, without supporting documentation, that she contributed the proceeds realized from the sale of her home to the building and furnishing of this home. Carl testified (likewise without supporting documentation) that the insurance proceeds from the fire loss was the only money used and that Edith made no economic contribution. Edith testified that she also purchased furniture for the house. Carl testified that most of the furniture and appliances from Edith's previous home were not moved to the new home, but instead that Edith gave most of it to her brother.

Carl stated that at the time of the trial a $10,000 mortgage remained on the property. The only evidence produced at trial as to the value of the house was a 1993 homestead application listing a value of $80,000. The couple also added a swimming pool to the house. Edith's adult daughter, Tracey, contributed financially to the building of the swimming pool. It was disputed as to whether this contribution was a loan by Edith's daughter or rather a gift made for the Bishop's benefit. Carl's attorney agreed that the addition of a swimming pool added to the value of the house.

There was testimony indicating that Edith did the entire planning of the house. She testified that she did all of the landscaping, lawn mowing, raking, and general outside work. Edith further testified that:

> I did all of the cooking, all of the, Carl don't know how to cook or do any of the inside stuff, either, but I did all of the cooking, I did all of the washing, I did all of the cleaning, all of the scrubbing toilets. I did all of the , the hanging wall paper, putting up blinds; I did everything.

Carl agreed with Edith's testimony that she did the cooking, cleaning and yard work.

The record in this case indicates there were a number of other assets. Carl owned a 1994 GMC truck, which was titled in his name. The truck had a value of approximately $20,000, according to Carl. The couple also owned a piano and various furnishings for the house. There was no evidence produced in

which to aid the trial court in its valuation of these home furnishings, with the exception of Carl's testimony that the furnishings originally cost around $7,000 or $8,000. At trial, Edith asked the court for a number of these furnishings. Edith also produced a list of smaller, more personal items at trial which reflected items that she brought to the marriage. She indicated that this would leave a substantial number of items in the house for Carl.

Carl owned a car shop and used car lot. There was also testimony that seems to indicate that Carl owned a part ownership in a car auction business at one time. Carl, however, denied that he had any ownership interest whatsoever.

Carl later sold the used car shop to his brother for $50,000, which he placed into a certificate of deposit. Subsequently, Carl borrowed $50,000 against this CD to invest a one-half interest in another business. This business was later sold. Carl testified that he deposited the money from the sale in the bank and that Edith then wrote checks on this account. Carl stated that Edith did have permission to sign checks on this account. There was also testimony that Edith made payments to two of her daughters. Carl stated that when Edith left the house at the time of the separation, she took cash out of a safe Carl kept at their house and cash out of his billfold. It should be noted that Chancellor Timothy Ervin found "the testimony relative to the removal of large sums of money from [Carl's] safe to be incredible and therefore discount[ed] that testimony."

As for the money that Edith withdrew from the bank account, she fully admitted such at trial. She stated that she made a payment of $5,000 to one of her daughters and that this was simply repayment for the loan that her daughter gave them when building the swimming pool mentioned supra. Carl contradicted this by stating that the $5,000 was a gift and never was there an agreement that the money would be repaid. Edith stated that she made a payment of $10,000 to another one of her daughters to assist her in buying a house for both of them to live.

During the separation, Edith returned to the home on several occasions to remove items of personal property. Carl testified that during these trips, Edith removed a number of items that he had inherited from his parents including a knife collection, watches, guns and jewelry, all valued at approximately $15,000. Again, there was no documentation to accompany the testimony. Carl also stated that Edith took a "leather living room suite." Edith testified to the contrary, stating that Carl "never had no jewelry, to his name. And he's never had no watch or no collection of knives or nothing." She also claimed that she and Carl never owned a leather living room suite.

There was testimony that Carl was undergoing dialysis treatment for kidney failure and he was under financial stress from having to pay medical bills and medical expenses related to a stomach problem, high blood pressure and kidney problems. He stated that he drew social security disability benefits and that he was not working at the time of the trial. He claimed his only source of income came from buying and reselling cars, which was only an occasional occupation. At the time of trial, Edith had begun working again as a beautician. Edith gave testimony that she, too, has bad health. She stated that she has a bad back, has been hospitalized with her nerves, and has recently had a breast biopsy.

In his Judgment of Divorce, the Honorable Timothy Ervin awarded Edith the 1994 GMC Extended cab pick-up, Edith's personal items included in an attachment to the judgment, washer and dryer, deep freeze, large bedroom suite purchased at Dickersons, table and chairs, one curio cabinet, coffee table, end tables, sofa table, big screen television, piano, and $20,000 by way of property settlement.

Further, he awarded Edith a lien against the real property on which the marital house is located to secure the payment of this sum. The Judgment of Divorce does not specifically state anything awarded to Carl. The only indication of what would be left to Carl came by way of Edith's testimony.

## STATEMENT OF THE ISSUE

**I. DID THE LOWER COURT ERR IN ITS DIVISION OF MARITAL ASSETS BY FAILING TO MAKE SUFFICIENT FINDINGS OF FACTS REGARDING THE NATURE, ORIGIN AND VALUE OF MARITAL ASSETS AND THE SUBSTANTIAL ECONOMIC CONTRIBUTIONS OF EACH PARTY TO THE ACQUISITION OF MARITAL ASSETS?**

## ANALYSIS

### A. Standard of Review

It is the well settled law of Mississippi that this Court's review is limited with regards to domestic relations matters. "This court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Ferguson v. Ferguson*, 639 So. 2d 921, 930 (Miss. 1994) (quoting *Bell v. Parker*, 563 So. 2d 594, 596-97 (Miss. 1990)). "Manifestly wrong" means that the findings of the chancellor were clearly erroneous or that a clearly erroneous legal standard was applied. *Magee v. Magee*, 661 So. 2d 1117, 1122 (Miss. 1995).

This Court has also held that "[o]n appeal the Supreme Court is required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong." *Newsom v. Newsom*, 557 So. 2d 511, 514 (Miss. 1990) (citing *Bryant v. Cameron*, 473 So. 2d 174, 179 (Miss. 1985)). This Court in *Newsom* further held that "where the chancellor made no specific finding [of fact], the Court is required by prior decisions and sound institutional considerations to proceed on the assumption that the Chancellor resolved all such fact issues in favor of appellee." *Newsom* at 514.

### B. The Law

A chancellor must first determine, pursuant to *Hemsley v. Hemsley*, 639 So. 2d 909 (Miss. 1994), whether the property to be divided is marital or non-marital. *Johnson v. Johnson*, 650 So. 2d 1281, 1287 (Miss. 1994). This Court defines "marital property for the purpose of divorce as being any and all property acquired or accumulated during the marriage." *Carrow v. Carrow*, 642 So. 2d 901, 906 (Miss. 1994) (quoting *Hemsley*, 639 So. 2d at 915). We further held that "for divorce purposes that the contributions and efforts of the marital partners whether economic, domestic or otherwise are of equal value." *Id.*

The marital property is to then be equitably divided. The leading case in Mississippi setting forth the factors chancellors must consider in arriving at an equitable division of marital assets is *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994). In *Ferguson*, this Court directed the chancellors to evaluate the division of marital assets by using the following guidelines and to support their decisions with findings of fact and conclusions of law for purposes of appellate review:

1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

a. Direct or indirect economic contribution to the acquisition of the property;

b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spend on family duties and duration of the marriage; and

c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

3. The market value and the emotional value of the assets subject to distribution.

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity ; and,

8. Any other factor which in equity should be considered.

*Ferguson*, 639 So. 2d at 928.

However, as stated in *Johnson v. Johnson*:

[T]his Court cannot determine whether the chancellor abused his discretion until he provides a record of his determination of both parties' non-marital assets, of his equitable distribution in light of each parties' non-marital property, guided by the *Ferguson* factors, and, if necessary to do equity, of any award of alimony.

650 So. 2d 1281, 1287 (Miss. 1994).

Carl argues that the chancellor gave no value to the assets contested, made no determination regarding the origin of the marital assets in dispute and made no determination as to the economic contributions of the parties beyond stating that each contributed to the home. Carl also states that the Chancellor failed to make a determination as to economic contribution to any of the personal property which was eventually awarded to Edith. Carl cites as error, the Chancellor's failure to take into account his inability to earn a living in the future due to his failing health. Carl further alleges that the Chancellor failed to make the proper findings of facts and conclusions of law sufficient to support his award.

In the Judgment of Divorce, the Honorable Timothy E. Ervin granted a divorce on the grounds of

irreconcilable differences. He then set out a property settlement as follows:

> By way of property settlement and division, the Plaintiff, Edith Bishop, shall have the permanent use, possession and ownership of the 1994 GMC Extended cab pick-up, the use of which she was granted by Temporary Decree in this matter. The proof reveals that the Defendant, Carl Bishop, placed a lien against this vehicle. The vehicle shall be conveyed to the Plaintiff, Edith Bishop, free of lien which shall be discharged by the Defendant.

> Additionally, the Plaintiff, Edith Bishop, shall have the washer and dryer, the deep freeze, the large bedroom suite purchased at Dickersons, the table and chairs, one curio cabinet, the coffee table, end tables and sofa table, big screen television, her piano and those items listed in the attachment hereto.

> . . . .

> The proof reveals that the parities, through their joint efforts and investment and after their marriage built a home on land owned by the Defendant, Carl Bishop. The Court heard testimony that the Plaintiff removed large sums of money from the Defendant's safe as well as wrote checks to herself at the time of the separation.

> The Court finds the testimony relative to the removal of large sums of money from the Defendant's safe to be incredible and therefore discounts that testimony. As to the money taken by the Plaintiff at the time of the separation, the Court finds this money was used to repay the Plaintiff's children for a loan they had made for the construction of a swimming pool.

> Taking all of this into consideration, the Court finds that the Plaintiff is entitled to a judgment in the amount of $20,000.00 by way of property settlement. Further, the Plaintiff is entitled to a lien against the real property on which the home is located to secure the payment of this sum, which shall bear interest at the rate of 8 percent per annum from and after June 1, 1996. The attorney for the Plaintiff shall prepare the papers necessary to effectuate this lien. The lien shall be paid at the rate of $10,000.00 per year. If the Defendant fails to pay this judgment as provided herein, the Plaintiff may initiate a judicial foreclosure.

> ORDERED, ADJUDGED AND DECREED this, the 31st day of May, 1996.

> /s/ Timothy E. Ervin

> Chancellor

This quoted language from the chancellor's Judgment of Divorce does not indicate to this Court whether or not the Honorable Chancellor considered factors we have set forth when making a determination of equitable distribution.

As stated supra, Carl argues that the chancellor gave no value to the assets contested. There was very little testimony as to the value of the disputed assets. For example, Edith asked the lower court for a number of items that were "acquired by [Edith] and Mr. Bishop" during the marriage. Edith offered no testimony or documentation as to the value of any of these assets. In fact the only testimony as to the value of these assets came from Carl when he stated that the furnishings cost around $7,000 or

$8,000 when purchased. The chancellor's Judgment of Divorce, supra, does not tell this Court whether or not he in fact used this valuation, nor does it give this Court the proper findings of fact and conclusions of law as required by *Ferguson*. The trial courts require proof as to the property values at issue before the court.

Edith also asked the lower court for a number of smaller, more personal items that she claimed to have brought to the marriage, thus being non-marital property. Carl offers no proof to the contrary. As stated previously, "assets accumulated during the marriage are, for the purpose of this divorce , marital property 'subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage.' " *Johnson*, 650 So. 2d at 1285 (quoting *Hemsley*, 639 So. 2d at 914-15). Therefore, since Carl offered no proof that these items were not non-marital and since "the chancellor is the judge of the weight and worth of the testimony in a divorce proceeding," Edith has shown that these smaller, more personal items are attributable to her separate estate and therefore not subject to equitable distribution. The chancellor properly awarded these items to Edith. However, as *Johnson* states, the marital property is to be equitably divided, using the *Ferguson* factors as a guide, in light of each parties' non-marital property. *Johnson*, 650 So. 2d at 1287). Once again, there is no indication in the record that the chancellor made a finding as to what was or what was not marital property or that he properly distributed the marital property. This Court has held before that the lower court must have proof as to whether the assets involved are marital assets or non-marital assets.

For example, the 1994 GMC Extended cab pick-up, which was titled in Carl's name, was awarded to Edith. The fact that the truck was titled in Carl's name only, in and of itself, is not a bar to Edith's award since the Chancery Court "has the authority to order an equitable division of jointly accumulated property and in doing so to look behind the formal state of title." *Johnson v. Johnson*, 550 So. 2d 416, 420 (Miss. 1989). There was no contradiction of the fact that the truck was purchased during the marriage. However, this Court is not able to determine the correctness of this award without a more complete and thorough findings of fact and conclusions of law. This is remanded to the lower court to be considered with the rest of the property.

Finally, the record was better in regard to the marital home and contains evidence of the parties' contributions. The chancellor found that "the proof reveals that the parties, through their joint efforts and investment and after their marriage built a home on land owned by the Defendant, Carl Bishop." (Emphasis added.) The house was awarded to Carl apparently in an effort to balance the other items and the $20,000 awarded to Edith. However, this Court cannot fully determine contributions of the parties toward the home equities and, therefore, the award of the house is also remanded for consideration with the remainder of the property after proper findings of fact and conclusions of law.

We hold that the chancellor did not properly follow *Ferguson* in that he failed to make proper findings of fact and conclusions of law so that we cannot discern what was brought to the marriage by the parties or what was attained by the parties during the marriage or which party contributed or gained in the way of marital assets. Therefore, this case is reversed and remanded for more detailed findings of fact and conclusions of law. In order to have proper review, the lower court must require proof as to whether the assets involved are marital or non-marital, and must also have proof as to the value of the property. The basis of the chancellor's distribution of assets cannot be determined by this Court. We find that there was inadequate proof in the record and inadequate findings of fact and

conclusions of law in the trial court's Judgment as necessary to aid this Court in its appellate review and as required in *Ferguson*, 639 So. 2d at 929. We therefore affirm as to the divorce granted and reverse and remand as to the economic matters.

**AFFIRMED IN PART AS TO THE DIVORCE GRANTED; REVERSED AND REMANDED IN PART AS TO ECONOMIC MATTERS.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., BANKS, McRAE, SMITH AND MILLS, JJ., CONCUR. ROBERTS, J., CONCURS IN RESULT ONLY.**